## J. D. LORD v. J. J. SAWYER.

STATUTE OF LIMITATIONS—EJECTMENT—ADVERSE POSSESSION.—The possession of land, although held in admitted subordination to the title of the Government, may nevertheless be adverse to every one not holding under the Government.

ID.—ID.—ID.—BARGAIN AND SALE DEED.—The execution of a bargain and sale deed does not prevent the grantor from afterwards taking and holding the land conveyed adversely to the grantee, or from acquiring title by the Statute of Limitations.

APPEAL from a judgment in favor of the plaintiff, and from an order denying a new trial, in the Superior Court of the County of El Dorado. WILLIAMS, J.

After the decision in Department, the respondent filed his petition that the appeal be reheard in Bank, and the application was denied.

*George G. Blanchard*, for Appellant.

By its instruction, the Court cut out of the case every issue which should properly have been submitted to the jury.

A party may invoke the Statute of Limitations in reference to rights over Government land. (*Page* v. *Fowler*, 28 Cal. 605; *McManus* v. *O'Sullivan*, 48 id. 15; *Page* v. *Fowler*, 37 id. 103; *Farish* v. *Coon*, 40 id. 57; *Hayes* v. *Martin*, 45 id. 559; *Overing* v. *Russell*, 32 Barb. 263; *Bradstreet* v. *Huntington*, 5 Peters, 440.)

Although Pollard was the grantor of the plaintiff, he could hold adversely. (*Hartman* v. *Reed*, 50 Cal. 485; *Franklin* v. *State Board of Examiners*, 23 id. 175.)

*H. O. Beatty*, for Respondent.

The Statute of Limitations does not run in favor of a man against his own deed. The statute reads: "Unless it appear that the plaintiff, his ancestor, predecessor, or grantor was seized or possessed of the premises in question within five years," etc. Here the plaintiff's grantor was possessed within a few months prior to the bringing of the action.

VOL. LVII.—5.

Ross, J.:

The complaint, which is in the usual form of an action of ejectment, was filed June 7th, 1879. The answer, among other things, denied the plaintiff's alleged title and right of possession, and set up in defense the Statute of Limitations. The defendant is the administrator of the estate of Benjamin F. Pollard, deceased. On the trial, the plaintiff introduced in evidence a bargain and sale deed for the land in controversy, from the said Pollard to the plaintiff, of date November 8th, 1859. At the time of the execution of this deed, the land belonged to the Government of the United States. Subsequently, to wit, on the 20th of May, 1874, the title to the land was acquired by Pollard from the Government, by patent issued to him of that date.

There was testimony given on behalf of the defendant, tending to show an adverse possession of the premises on the part of Pollard, for much more than the statutory period, and for more than five years immediately preceding the obtaining of the title by Pollard from the Government. Indeed, the plaintiff himself testified: "Pollard never accounted to me for the rents and profits of the ranch. There was no talk that he should. I think I asked him a good many times for money from the ranch, and other moneys. I never asked Pollard for possession of the place. He had possession all the time, and controlled everything. I did not furnish any of the money to pay the Government for the land, or to pay the taxes on it. I suppose Pollard paid it. *I think Pollard told me that he intended to try to get a patent from the Government for the land for himself.* After Pollard obtained the Government title, he told me of it. This was the first I knew of his obtaining title. I did not say anything against it. I said nothing.  *  *  *  *When Pollard was going to get the patent, I had an idea that my title had expired by the Statute of Limitation.*"

On the part of the defendant, the witness Harris testified: "I knew Pollard for twenty-five years living on the place. *  *  * Ever since 1859, Pollard has been using the property as his own, claiming to own it. Has offered it for sale. Applied for it in his own name; purchased it from the Govern-

ment. I was a witness for him before the United States Land Office, when he proved up and paid for it to the Government. This was in 1871 or 1872. He said, when he made the affidavit, that it was his own, and that there was no other claim to it." There is other testimony in the record tending to show that Pollard, from 1859 to the time of his death, which occurred January 22nd, 1879, held the adverse possession as against every one but the Government of the United States.

It is well settled in this Court, that such possession, though held in admitted subordination to the title of the Government, may nevertheless be adverse to every one not holding under the Government. (*McManus* v. *O'Sullivan*, 48 Cal. 7; *Page* v. *Fowler*, 28 id. 611; *Hayes* v. *Martin*, 45 id. 559.)

The fact that Pollard executed to the plaintiff the deed of November 8th, 1859, did not prevent him from afterwards taking and holding adverse possession of the premises as against the plaintiff. (3 Washburn on Real Prop. p. 88; *Dorland* v. *Magilton*, 47 Cal. 485; *Franklin* v. *Dorland*, 28 id. 175; *Hartman* v. *Reed*, 50 id. 485; *Jackson* v. *Brink*, 5 Cowen, 484.) It results, that the Court below erred in giving to the jury, as it did, this instruction:

" The plaintiff moves the Court to instruct the jury, that if they believe, from the evidence, that the defendant, on or about the 7th day of February, 1879, entered into possession of the premises in dispute, claiming the same as a part of the estate of Benjamin F. Pollard, deceased, and so remained up to the time this action was commenced, to wit, June 7th, 1879, and that the plaintiff, on or about the 16th day of April, 1879, demanded the possession of said premises of the defendant, and he (the defendant) declined to surrender the same; and further, that Benjamin F. Pollard departed this life some time in the month of January, 1879, and prior to the 23d day of that month, and no administrator was appointed on his estate until February 7th, 1879, then they must find for the plaintiff."

This was the only instruction given. Under it, there was nothing for the jury to do but to return a verdict for the plaintiff, which it did, irrespective of the question of the Statute of Limitations, or of any other fact or facts than those recited in the instruction.

Judgment and order reversed, and cause remanded for a new trial.

MORRISON, C. J., and McKINSTRY, J., concurred.