[No. 13212. In Bank. — December 14, 1889.]

## J. H. McCORMACK ET AL., RESPONDENTS, v. ANNIE T. SILSBY ET AL., APPELLANTS.

ADVERSE POSSESSION — TITLE — SUIT TO QUIET TITLE. — Adverse possession for the requisite time and character confers a title, upon which the owner may maintain a suit to quiet title.

TENANTS IN COMMON — OUSTER — STATUTE OF LIMITATIONS — MISTAKE AS TO RIGHTS OF THE PARTIES. — If one tenant in common notifies the other that he claims the whole property as his own, and orders the other to leave, and the latter acquiesces in the pretension and leaves the premises to the possession of the first, there is an ouster, and the statute of

limitations begins to run, notwithstanding the fact that neither party was aware of the true state of the title, and each was under a mistake with reference to his rights.

ADVERSE POSSESSION — HOMESTEAD. — Adverse possession for the requisite time and character will extinguish a homestead.

APPEAL from a judgment of the Superior Court of Butte County, and from an order denying a new trial.

The facts are stated in the opinion.

*Gray & Sexton,* for Appellants.

*Park Henshaw,* for Respondents.

HAYNE, C.—Suit to quiet title; judgment for plaintiffs; defendants appeal.

The paper-title of the parties is in a sufficiently mangled condition.

On December 27, 1877, W. H. Silsby and E. D. Silsby were tenants in common of the property. On that day W. H. Silsby made a deed to Carroll and Miller, in trust to secure certain indebtedness to the Pacific Mutual Life Insurance Company. It cannot be ascertained from the record whether this deed purported to be of the whole title, or only of the grantor's interest therein, nor can the terms and conditions of the trust be ascertained further than is above stated. In April, 1878, the trustees sold the property to the insurance company. It cannot be ascertained whether this sale was properly made by the trustees or not. It is found that "a deed was subsequently, on the nineteenth day of April, 1879, executed to said insurance company by said trustees, and *they* became the owners and succeeded to the interest of said W. H. Silsby, in and to said lands." In October, 1879, the insurance company made a deed of all its right, title, and interest in the property to the plaintiffs.

In September, 1878 (which was after the making of the trust deed above mentioned), W. H. and E. D. Silsby

made a deed of the property to Falkner, Morehead, and Davis, as trustees for the benefit of creditors.

In December, 1878 (which was after the last-mentioned deed), E. D. Silsby, who was then residing with his family on the property, declared a homestead thereon.

In June, 1887, E. D. Silsby died; and in December of the same year the surviving trustees, for the benefit of creditors, executed a reconveyance of the property to W. H. and E. D. Silsby (which latter person was then dead), reciting that the deed to them was inefficient by reason of the prior deed of trust to Carroll and Miller, and that the reconveyance was made "for the purpose of clearing the title."

The action was commenced in 1888 against the widow and children of E. D. Silsby.

We do not deem it necessary to consider the effect of this paper-title, for the reason that in our opinion the plaintiffs acquired a title by adverse possession. The court finds in this regard as follows: "That on the —— day of November, 1879, said plaintiffs ousted the said E. D. Silsby from said premises, and entered into the actual possession of all of said lands, claiming all interest therein, as their own and in their own right, exclusive, and they have ever since said date last aforesaid, continuously, notoriously, and openly, occupied, used, and cultivated the said land, under a claim of title as their own, exclusive of any other right or interest, and hostile to the said E. D. Silsby and all the world. And have paid all the taxes,—state, county, and municipal,—assessed against said land and premises since said date of October, 1879, and that they had and held said land as just stated for more than five years continuously, to wit, from November, 1879, to June 10, 1887, prior to the death of the said E. D. Silsby."

We think that this finding is sustained by the evidence. It appears that the plaintiffs took their deed

from the insurance company without any examination of the title, and supposed that they acquired the whole title. One of them says: "I do not know that I bought only half the ranch,—bought 320 acres more or less. I did not examine the records or have them examined. Took it upon their say so. When I got the deed from the insurance company, I did not know that I was purchasing only one half," and the court finds this to be the fact. Acting under this belief, they went to E. D. Silsby, who was in possession of the property, "told Silsby we had bought the land," and demanded possession. The latter seems to have been in equal ignorance of the true state of the title. He made no assertion of any right to the property; said "he was sorry he had not been able to keep the place for a home," delivered up the keys, asked for a short time in which to move off, and actually moved away within two weeks. It is not disputed that for eight years subsequent to this occurrence the plaintiffs were in the actual possession, claiming the property as their own, and that during all this time Silsby knew that they were so in possession, but asserted no claim on his part. That such a misapprehension occurred is conceded by the counsel for the appellants, who say: "Each party appears to have been laboring under a mistaken idea of his rights. Probably a like mistake all around never took place before and never will occur again."

But such mistake does not prevent the possession of the plaintiffs from being adverse. It is not material to consider what was the character of the deed under which the plaintiffs entered. That could only be material upon the question of the nature of the claim asserted by plaintiffs, and of notice to Silsby of such claim. The plaintiffs informed the occupant in so many words that they had bought the whole property, and that he must go. He acquiesced in the claim, and went. It matters not whether the claim asserted by the plaintiffs

was well or ill founded, or whether the occupant might have made successful resistance if he had attempted to do so. The intent of the plaintiffs to claim the land as their own and to dispute the right of the occupant was clearly manifested (*Bath* v. *Valdez*, 70 Cal. 359), and this being so, knowledge of the actual state of the title was immaterial. There was certainly an ouster, and the subsequent possession was clearly adverse. (*Sneed* v. *Osborn*, 25 Cal. 626; *Grimm* v. *Curley*, 43 Cal. 250.)

This adverse possession gave the plaintiffs a title upon which a suit to quiet title could be maintained.

The question to which the learned counsel have addressed the main portion of their argument is as to the validity of the homestead, it being urged on one side, and denied on the other, that under the code a homestead can be declared upon an undivided interest. But we do not think it necessary to express an opinion upon this question. Assuming that the homestead was valid at its inception, it was extinguished (not by abandonment) but by the adverse possession of plaintiffs. (*Mauldin* v. *Cox*, 67 Cal. 387.)

We therefore advise that the judgment and order appealed from be affirmed

Foote, C., and Vanclief, C., concurred.

The Court.—For the reasons given in the foregoing opinion, judgment and order affirmed.