[Sac. No. 583.   Department One.—March 24, 1900.]

ROCK BAKER, Appellant, v. JOSEPH CLARK et al., Respondents.

QUITCLAIM DEED — AMBIGUOUS TERMS — PAROL EVIDENCE — GRANT OF LICENSE TO MINE AND NOT OF FEE.—A quitclaim deed by the owner of a large tract of land of a small parcel described therein, with the words following the description, "the aforesaid premises to be occupied and used by the party of the second part for the purpose of working and operating the Boyleston mining claim," situated thereon, and referring to the record of the claim as located by the grantee for particular description, and with a *habendum* clause concluding, "for the uses and purposes aforesaid, and upon the conditions hereinbefore specified," is sufficiently ambiguous in its terms to admit of parol evidence of the circumstances and situation of the parties, and may be construed, in the light of such evidence justifying it, as intended to convey merely a license to work the mine described, and not a title to the premises in fee simple.

ID.—PRESCRIPTIVE TITLE—ADVERSE POSSESSION OF GRANTOR—ACTION TO QUIET TITLE.—Such quitclaim deed does not preclude the acquisition of a full title in the grantor by prescription as against the grantee of the mining right and those claiming under him; and upon repudiation of the contract by the grantor, and adverse possession by him of the whole of the tract, and payment of all taxes thereon for more than five years, a prescriptive title

is acquired upon the basis of which the owner thereof may maintain an action to quiet his title against the grantee of the mining right and his subsequent grantees.

APPEAL from a judgment of the Superior Court of Tuolumne County and from an order denying a new trial. C. V. Gottschalk, Judge, presiding.

The facts are stated in the opinion of the court.

Gavin McNab, J. F. Rooney, and James L. Robison, for Appellant.

The situation of the parties and the surrounding circumstances were properly to be considered in construing the grant, and so construed it shows that less than a fee simple estate was intended. (*Pellissier v. Corker*, 103 Cal. 516; *Barnett v. Barnett*, 104 Cal. 299, 300; *Hall v. Shotwell*, 66 Cal. 380.) A grantor may acquire a prescriptive title by adverse possession as against the grantee. (*Lord v. Sawyer*, 57 Cal. 65; *Dorland v. Magilton*, 47 Cal. 486, 487; *Franklin v. Dorland*, 28 Cal. 175, 180; 87 Am. Dec. 111; *Garabaldi v. Shattuck*, 70 Cal. 512.) A prescriptive title may be the basis of an action to quiet title against a defendant who holds the record title. (*Arrington v. Liscom*, 34 Cal. 365, 371, 388, 389; 94 Am. Dec. 722; *Liebrand v. Otto*, 56 Cal. 242; *McCormack v. Silsby*, 82 Cal. 72; *McGovern v. Mowry*, 91 Cal. 383.)

F. W. Street, and J. B. Curtin, for Respondents.

It is a well-established rule in this state that in an action to quiet title the plaintiff must establish in himself a legal title. (*Von Drachenfels v. Doolittle*, 77 Cal. 295; *Nidever v. Ayers*, 83 Cal. 39; *Bryan v. Tormey*, 84 Cal. 126; *Harrigan v. Mowry*, 84 Cal. 456; *Tuffree v. Polhemus*, 108 Cal. 676; *Fudickar v. East Riverside*, 109 Cal. 38.) A quitclaim deed conveys all the title then possessed by the grantor. (*Faivre v. Daley*, 93 Cal. 664.) The deed conveyed the title in fee simple. (*Eldridge v. See Yup Co.*, 17 Cal. 45; *Cullen v. Sprigg*, 83 Cal. 56-64; *Craig v. Wells*, 11 N. Y. 321; *Hill v. Priestly*, 52 N. Y. 635; *Vail v. Long Island Ry. Co.*, 106 N. Y. 283; 60 Am. Rep. 449; *Tinker v. Forbes*, 136 Ill. 221; *Soukup v. Topka*, 54 Minn. 66; 40 Am.

St. Rep. 299.) Plaintiff's title by adverse possession is not *in esse,* not having been pleaded. (*American Co. v. Bradford,* 27 Cal. 360; *Woodward v. Faris,* 109 Cal. 12-18; *Mathews v. Ferrea,* 45 Cal. 51; *Heintzen v. Binninger,* 79 Cal. 5; *Bliss v. Sneath,* 119 Cal. 526-28.) The possession of the vendor is not adverse to the vendee until some unequivocal act of adverse possession is brought to the knowledge of the vendee. (*Ingles v. Ingles,* 150 Pa. St. 397; *Paldi v. Paldi,* 84 Mich. 346.)

VAN DYKE, J.—Action to quiet title; the complaint is in the usual form. The defendant Clark disclaims any interest, but alleges that on the 27th of August, 1887, the plaintiff then being the owner, for a valuable consideration, conveyed to him, Clark, the premises in controversy; and that on the twenty-first day of April, 1897, he, Clark, conveyed the same to the other defendants, Carter and Mathewson. In their separate answer Carter and Mathewson, after denying the ownership and possession of the plaintiff, admit that they claim an interest in the premises, and that such claim is based upon a deed from their codefendant, Clark, as stated in the answer of said Clark, and ask that they be decreed to be the owners of and entitled to the possession of said premises, and that the plaintiff has no right, title, or interest therein.

The court finds: 1. That the plaintiff was the owner of and in the possession of that certain piece or parcel of land described in the complaint, and that on the twenty-seventh day of August, 1887, for a valuable consideration, he executed a deed to the defendant, Joseph Clark, which deed is set forth in full in the said findings. The deed purports to have been made for the consideration of three hundred dollars, and is in form a quitclaim. Following the description of the premises the deed reads: "The aforesaid premises to be occupied and used by the party of the second part for the purpose of working and operating the Boylston mining claim, situate in and upon the conveyed premises. Said mining claim was located by said Joseph Clark, party of the second part, January 26, 1885. Location recorded in volume 3, page 371, Mining Records of Tuolumne county, to which record reference is made for particular description of said premises. The party of the second

part to erect and maintain such gates and bars as he may need for entering upon said premises through the fences of the party of the first part, and not to suffer any animals to enter upon the premises of the party of the first part through any gates or bars he may set up in the fences of the said party of the first part." And at the close of the *habendum* clause are added the words: "For the uses and purposes aforesaid and upon the conditions hereinbefore specified."

The court also finds: "2. That on the 21st of April, 1897, Joseph Clark by deed conveyed the same premises to the defendants Carter and Mathewson."

Upon these two findings of fact the court bases its conclusions of law: "That the defendants, W. F. Carter and W. H. Mathewson, are entitled to the judgment and decree of this court, that on the twenty-first day of April, 1897, they became the owners, and that they ever since have been, and now are, the owners of and entitled to the possession of the lands and premises in the complaint and in the findings of fact herein described, and that the plaintiff be forever barred from asserting any claim whatever in or to said land and premises adverse to said defendants W. F. Carter and W. H. Mathewson, and that said defendants are further entitled to judgment against plaintiff for their costs incurred in this action."

Plaintiff moved for a new trial, on the grounds, among others, of the insufficiency of the evidence to justify said decision, and that the decision is against law. This appeal is from the order denying plaintiff's motion for a new trial, as well as from the judgment.

It was admitted at the trial, as appears from the record, that the plaintiff at the time of and prior to the deed to Clark was the owner in fee and in the possession of the tract of land embracing the premises in controversy. Plaintiff's title was by deed to the portion of his tract of land included in the Summerville townsite patent, and by United States patent to that portion outside of said townsite.

Plaintiff testified that he had been in possession of this tract of land for about twenty-five years, and that he had used it for agricultural and mining purposes. In reference to the sale to or trade with Clark he testified as follows: "I became acquainted

with Joseph Clark, one of the defendants in this action, ten years ago. At that time I had transaction with him concerning this land in controversy. He asked me like this: 'He says, I would like you to give me the right to prospect on that ground, about five or six acres; if you give me a deed for that piece. of ground [pointing in that direction], and says, I will give the surface of twenty acres,' on this piece of ground he mentioned, adjoining the Carlotta mine, Pennsylvania mine and Portofino mine, and I told him I would. He told me to come down on a certain day and meet him at Mr. Kalloch's office. When I got there he had this deed already drawn up. He told me to make it lawful, to make it one dollar. I told him all right, and he wrote it down. He told me to go up and put it on record. I didn't know any better. He didn't give me that dollar. I took a dollar out of my pocket and went down and took it to the recorder's office and had it recorded. Clark promised to give me rights upon the Carlotta, Pennsylvania, and Portofino mines for the deed I gave him. He gave me a paper for the paper I gave him.

"Q. Was there any money paid by him to you, or you to him? A. No, sir. It was never intended to be any money paid by either parties. I have been in possession of this land all the time since; and have used it and claimed it every day. It is inclosed with a board and wire fence." (The deed in question is signed by Baker with his mark, he being illiterate.)

He further testified that he never took possession of the Pennsylvania and Carlotta mines, for the reason that Clark had no title to them. He says: "I learned afterward that other parties obtained and held the premises. He never occupied these premises of mine and never asked to occupy them. I have used them for agricultural purposes all the time, and used it for mining. I had a hole dug out, a shaft made in early days; I cleaned it out. I leased these premises for mining purposes to Mr. Fischer. I leased them to Mr. James Curtis for mining purposes before I leased them to Mr. Fischer."

The appellant contends that by the deed to Clark he simply conveyed the right to mine on the ground designated in the deed, and that said deed did not pass the title to the premises in fee. The respondents on the other hand contend that the deed conveyed an absolute title.

There is, however, sufficient uncertainty in reference to what the parties intended, from the language of the deed itself, to justify a resort to "circumstances under which it was made, including the situation of the subject of the instrument and of the parties to it," to aid the court in arriving at a proper construction of it. (Code Civ. Proc., sec. 1860.)

The evidence at the trial discloses the circumstances under which the deed was made and the situation of the parties to it. Clark had located the so-called Boylston mine some two years prior to the date of the deed; which mining ground turned out to be within the premises to which Baker held the title and was in possession. He desired, it seems, to further develop and work that mine, and sought out Baker to obtain permission to do so, and in exchange for that right purported to convey to Baker the same right to work other mines, claimed by him, Clark; so that the transaction practically amounted to an exchange of the right or license to work mining ground. It would seem, therefore, that the deed, read in the light of the surrounding circumstances and the situation of the parties, was intended by them to be a conveyance or license to work and operate the so-called Boylston mine, mentioned in the deed, and not a title of the premises in fee simple.

After the exchange of deeds it appears that Baker ascertained that Clark had no right or title whatever to the mining ground he had purported to convey to Baker, and that he had received nothing from Clark as a consideration for his deed to him. Thereupon Baker repudiated the transaction, and from that time claimed the tract described in the deed as a portion of his own premises, not recognizing any right of Clark therein for any purpose.

Baker, from that time, continued in the open, notorious, uninterrupted, adverse, and exclusive possession of the premises, claiming the same in his own right; said premises were substantially inclosed and cultivated, and he also paid all taxes assessed thereon for nearly ten years prior to the deed from Clark to the respondents.

The evidence was quite clear, also, that respondent Mathewson, who transacted the business with Clark, had notice and knowledge of the claim and possession of Baker at the time he obtained the deed for himself and his codefendant, Carter.

Whatever construction may be put upon his deed to Clark, the plaintiff had acquired title by prescription long before action was brought. (Code Civ. Proc., secs. 323-25.)

"Occupancy for the period prescribed by the Code of Civil Procedure as sufficient to bar an action for the recovery of the property confers a title thereto, denominated a title by prescription which is sufficient against all." (Civ. Code, sec. 1007; *Arrington v. Liscom*, 34 Cal. 365; 94 Am. Dec. 722; *McCormack v. Silsby*, 82 Cal. 72; *McGovern v. Mowry*, 91 Cal. 383.)

Nor does the execution of a deed prevent the grantor from afterward acquiring title by adverse possession against his grantee. (*Lord v. Sawyer*, 57 Cal. 65; *Dorland v. Magilton*, 47 Cal. 486, 487; *Franklin v. Dorland*, 28 Cal. 180; *Garabaldi v. Shattuck*, 70 Cal. 512.)

And title by prescription is available as the basis of an action as well as for defense; as declared by the code, such title "is sufficient against all."

The findings of the court are not supported by the evidence, and the decision is against law.

The judgment and order denying a new trial are reversed.

Garoutte, J., and Harrison, J., concurred.

Hearing in Bank denied.