[Civ. No. 1040.   Third Appellate District.—February 7, 1913.]

RICHARD GERNON, Executor of the Last Will of Charles R. Wood, Deceased, Appellant, v. ELMER L. SISSON, Respondent.

QUIETING TITLE BY EXECUTOR—GENUINENESS OF DEED OF GIFT—FINDING—EVIDENCE.—In an action by an executor to quiet title to land, which involved the question of the genuineness of a deed of gift of the land to the defendant by the plaintiff's testator, the evidence, although conflicting, is held sufficient to support the finding that the deed was genuine.

ID.—ACKNOWLEDGED DEED ADMISSIBLE IN EVIDENCE WITHOUT FURTHER PROOF.—Such deed, properly acknowledged, was admissible in evidence without further proof, under section 1951 of the Code of Civil Procedure, and was competent evidence of a grant to the grantee from the grantor.

ID.—AFFIDAVIT DENYING GENUINENESS OF DEED TO DEFENDANT—EFFECT OF AFFIDAVIT.—The filing by the plaintiff in such action, in pursuance of section 448 of the Code of Civil Procedure, of an affidavit denying the genuineness and due execution of the deed to the defendant, did not deprive the defendant of the right to offer such deed in evidence without further proof. The only effect of the filing of such affidavit, which constituted a part of the pleadings, .was to enable the plaintiff to controvert the genuineness of the deed.

ID.—EVIDENCE—CONVERSATIONS BETWEEN GRANTEE AND GRANTOR—GRANTEE A COMPETENT WITNESS.—Such action, not being against the executor, nor upon any claim or demand against the estate of the grantor, the grantee was a competent witness to testify to conversations he had with the grantor in his lifetime.

ID.—DELIVERY—GRANTOR CONTINUING IN POSSESSION—ADVERSE POSSESSION.—A deed is presumed to have been delivered at its date. By its execution and delivery, the entire legal interest in the land vests in the grantee, and if the grantor continues in possession afterward his possession will be either as tenant or trustee of the grantee, and nothing short of an explicit disclaimer of such relation and a notorious assertion of right in himself will be sufficient to change the character of his possession and render it adverse to the grantee.

APPEAL from a judgment of the Superior Court of Tehama County. John F. Ellison, Judge.

The facts are stated in the opinion of the court.

J. N. True, for Appellant.

W. P. Johnson, and McCoy & Gans, for Respondent.

CHIPMAN, P. J.—Plaintiff brings this action as executor of the last will of Charles R. Wood, deceased, to quiet the title in the estate to certain land in Tehama County. Defendant claims title by deed executed by said Wood on January 20, 1903. Wood died June 1, 1911, and, in his last will, executed September 11, 1907, he specifically devised the land in question to certain named heirs of his deceased sister and nominated plaintiff as the executor of said will. The conveyance to defendant is conceded to be a deed of gift and contains the following provision:

"This grant, however, is with the express understanding and agreement that the party of the second part (the grantee) is to pay to the party of the first part (the grantor) one-fourth of all crops raised on said lands, during the lifetime of the party of the first part, and it is expressly understood and agreed that this reservation is intended between the parties hereto to be a reservation of a life interest in the property conveyed to the extent of such rental, but is in no way to interfere with the possession of said party of the second part to the said property, and this interest shall die with the party of the first part, and from and after his death, the party of the second part and his heirs and assigns will be relieved from such obligation."

The cause was tried by the court and findings and judgment went for defendant. Plaintiff appeals from the judgment and brings the record here under the provisions of sections 941a to 941c and 953a to 953c of the Code of Civil Procedure.

Some other points are presented by the appellant which will be noticed, but the question of primary importance advanced by appellant is whether the deed from Wood to the defendant is genuine or a fabrication. On its face it conveys the fee absolute subject to the reservation above quoted and if gen-

uine the finding of the court that by it the title passed to defendant is supported.

It was in evidence that Wood and defendant were intimate friends at the time the deed was executed and that Wood had often expressed an intention to leave this property to defendant; that he had no known relatives in whom he felt any interest. H. P. Andrews, a practicing attorney of Red Bluff, who had attended to Wood's legal business, testified: That Wood came to him the day before the date of the deed and explained to Andrews that he wanted an instrument drawn which would convey the property to defendant, but wanted to reserve the use of the land or its rentals in himself during his life. Andrews prepared the deed as directed by Wood, who signed and acknowledged it before Andrews as notary public. Andrews testified: "I wrote the deed, and I think it was the next day that he came in and signed and acknowledged it, after having carefully gone over the matter again after it was written out. . . . I asked him what I must do with the deed. He says, 'You can either give it to Elmer (Elmer Sisson was the grantee) or you can keep it for him; I want him to have it; I want him to have the property." I then took the deed and put it in the secret drawer of my safe, and I kept it there until last spring." He testified that, shortly after the deed was signed, a few days later, he informed defendant of the deed. He was asked what arrangements, if any, were made with defendant in regard to the deed, and answered: "He told me to just let it stay there in the safe. Q. Then for whom were you keeping the deed? A. Elmer L. Sisson." This witness testified that for several years thereafter and until the latter part of the summer of 1907 Wood received the rentals or income of the place through the witness to whom defendant or the tenants paid the money for Wood and that Wood frequently referred to the matter of his interest in the property as being only that provided for in the deed. There was evidence that defendant attended to renting the property and to some extent had the care of it, although Wood came and went to and from the property at his will and spent some time on the place at intervals. Defendant testified: "I arranged with Mr. A. B. Miller to rent the property and instructed him to pay the money to the Bank of Tehama County to the credit of Mr. Wood. Q. Did you

rent the property as your own property? A. I did, for Mr. Wood's interest. I rented it for Mr. Wood to have the rental, under the terms of the deed." Defendant also testified that a few days after the deed was executed Andrews told him of it, and handed the deed to him, and defendant gave it back to Andrews with directions to keep it for him. Miller had the place one year, and, after him, the tenants were the Sisson Brothers, cousins of defendant, to whom defendant rented the farm. They remained until the fall of 1907, paying the rentals to Andrews for Wood as directed by defendant. Other tenants followed in succeeding years, sometimes Wood making the arrangement, after consultation with defendant, and sometimes defendant attending to the renting. Defendant also testified that it was agreed between him and Wood that the latter would pay the taxes inasmuch as he received all the rentals.

The principal, and practically, the only act of Wood indicating claim of ownership of the land in himself was the will executed by him September 11, 1907, in which he attempted to devise the land to certain named relatives. Defendant had no knowledge of the execution of this will until after Wood was adjudged insane, when he was told of it by the executor, Gernon. But the evidence was that, after the will was executed, defendant's relation to the property and to Wood remained the same as before.

It appeared that, a short time before his death, Wood was adjudged insane and sent to the Napa state hospital, and while there the deed was delivered to defendant by Andrews. The day following his death defendant had the deed recorded. There was no attempt to impeach either Andrews or defendant except by some expert testimony to the effect that the signature to the deed was not made by the same hand as signed certain admitted examples of Wood's handwriting. Other experts were very positive that the will and these other signatures were in the genuine handwriting of Wood. Upon the question of the genuineness of the deed the evidence is ample to support the finding.

Defendant's deed was admissible under section 1951 of the Code of Civil Procedure and was competent evidence of a grant to the grantee from the grantor. (*McDougall* v. *McDougall,* 135 Cal. 316, 319, [67 Pac. 778].)

Appellant seems to hold, under section 448 of the Code of Civil Procedure, that, having filed what he terms an affidavit of *non est factum,* the burden was thereby cast upon defendant to first establish "the genuineness and due execution" of the deed before it. was admissible, and took from defendant the right given him by section 1951 of the Code of Civil Procedure. As we understand section 448, the affidavit relieves the party from the effect which his failure to make the affidavit would entail,—namely, the genuineness and due execution of the instrument would be deemed admitted. Having filed the affidavit, he was in a position to controvert the genuineness of the deed. The affidavit is not evidence and is but a part of the pleadings. In *Moore* v. *Copp,* 119 Cal. 429, 432, [51 Pac. 630), this section was construed and the cases cited, and it was there pointed out that the plaintiff may controvert the instrument on various grounds where there is no affidavit "except that he cannot controvert its due execution nor its genuineness." However, the issue was fully gone into by both parties, and the genuineness and due execution of the deed, as we have seen, were amply established.

It is also contended that defendant was not a competent witness to testify to conversations he had with Wood in his lifetime, citing subdivision 3, section 1880, of the Code of Civil Procedure. The proceeding here is not against the executor nor is it upon any claim or demand against the estate of the deceased person. The point is not well taken. (*Poulson* v. *Stanley,* 122 Cal. 655, [68 Am. St. Rep. 73, 55 Pac. 605]; *Bollinger* v. *Wright,* 143 Cal. 296, [76 Pac. 1108]; *Calmon* v. *Carraille,* 142 Cal. 642, [76 Pac. 486].)

Some question is raised as to the delivery of the deed. There is a presumption that a deed was delivered at its date. This presumption was strengthened by the testimony of Andrews, which showed an actual delivery to him for the benefit of the grantee and the grantee's assent is shown both by the testimony of the grantee and by Andrews. (See Civ. Code, sec. 1059, subd. 2.)

Appellant's claim that Wood acquired title as against this deed by adverse possession finds no support in the evidence. "By the execution and delivery of. a deed of land the entire legal interest in the premises vests in the grantee, and if the grantor continues in possession afterward his possession will

be either of tenant or trustee of the grantee. He will be regarded as holding the premises in subserviency to the gran-.tee, and nothing short of an explicit disclaimer of such relation and a notorious assertion of right in himself will be sufficient to change the character of his possession and render it adverse to the grantee." (1 Cyc., p. 1039; Code Civ. Proc., sec. 321.) There is no evidence of hostility to defendant's title or his control of the property. All the evidence shows that Wood was entirely satisfied with the disposition of the property made by him. His attempt to devise it by will is unexplained, and, standing alone, whether explained or not, it is wholly insufficient to show adverse possession or hostility to defendant's title.

The judgment is affirmed.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 8, 1913.