[S. F. No. 7592. Department Two.—December 18, 1917.]

## ARTURO WOLF et al., Appellants, v. CHARLES FUNKENSTEIN GALL et al., Respondents.

[S. F. No. 7617. Department Two.—December 18, 1917.]

## ARTURO WOLF et al., Appellants, v. CHARLES FUNKENSTEIN GALL et al., Respondents.

QUIETING TITLE—ACTION TO QUIET TITLE—PLEADING—AFFIRMATIVE DEFENSE—DEED TO DEFENDANTS' FROM ANCESTOR UNDER WHOM PLAINTIFFS CLAIM AS HEIRS—ISSUES.—Where, in an action to quiet title by plaintiffs, claiming as heirs of a former owner, defendants set up by answer the affirmative defense of a deed to themselves from the same former owner and sought a decree establishing their own title and enjoining the plaintiffs from asserting title, the law gave the plaintiffs a replication without pleading to defendants' asserted title, so that under the issues framed, plaintiffs had the right to overcome the effect of the deed and destroy its validity upon either equitable or legal ground, and where the defendants prevailed in such action the judgment properly enjoined the plaintiffs from further litigation to set aside the same deed.

ID.—PRESCRIPTIVE AS WELL AS RECORD TITLE ALLEGED IN DEFENDANTS—FINDINGS—FAILURE TO FIND ON PRESCRIPTIVE TITLE—FAILURE IMMATERIAL.—Where, in an action to quiet title, the defendants tender issues setting up title in themselves, both by deed and by prescription, the failure of the court to find on the issue of prescriptive title could not injure the plaintiffs if the court found the record title in the defendants, and the decree establishing the same was good.

APPEAL—CONFLICT OF EVIDENCE—FINDINGS CONCLUSIVE.—Where there is clear and substantial evidence to support a finding of a trial judge, the supreme court's province as a court of review ends.

EVIDENCE—EXPERT TESTIMONY—GENUINENESS OF SIGNATURE BY "MARK."—Expert testimony is not admissible to show that a signature, purporting to be made by "mark," was made by someone else or that some other person directed the pen.

ID.—TYPEWRITING AS "HANDWRITING"—OPINION OF WITNESS INADMISSIBLE.—Typewriting is not. "handwriting," concerning which the opinion of a witness is admissible under subdivision 9 of section 1870 of the Code of Civil Procedure.

APPEAL from a judgment of the Superior Court of San Francisco. Geo. A. Sturtevant, Judge.

The facts are stated in the opinion of the court.

Denson, Cooley & Denson, and Theodore A. Bell, for Appellants.

J. R. Pringle, Edgar D. Peixotto, and Leon Samuels, for Respondents.

HENSHAW, J.—Plaintiffs brought their action to quiet title to one undivided tenth each in certain real property in the city and county of San Francisco. Their asserted title rested upon their claim of heirship as children of a deceased child of Tobe Funkenstein, their paternal grandmother, their father being Newman Wolf, a son of the said Tobe, who predeceased her. The defendants are the four surviving children of Tobe Funkenstein, issue of her second marriage. They answered to the same effect. They asserted prior ownership in the property in their mother and alleged that on December 21, 1907, she made and executed to them her deed of grant, conveying the property in question to them—her four children—as tenants in common. They denied the asserted ownership of the plaintiffs in and to any part of the realty, and finally pleaded prescriptive title. Trial was had, resulting in findings and judgment in favor of the defendants. Plaintiff, Arturo Wolf, appeals from the judgment (S. F. No. 7592). Plaintiff, Maria Julia Wolf, appeals from the order denying her motion for a new trial (S. F. No. 7617). In its findings the court declared that prior to, at the time of, and subsequent to the making of the deed to her four children, respondents herein, Tobe Funkenstein, though aged in years, possessed all her mental faculties, and was at all times mentally competent, and that at the time of, and in the making of, the deed she "was of sound mind and memory and not acting under mistake, duress, fraud, menace, or undue influence of any kind." The principal grievance urged upon our attention on the appeal from the judgment is over the findings above quoted, and this means simply that these appellants are unwilling to be foreclosed by the judgment in this action which they brought, from further litigating issues of fraud presented by them and determined against them in the action. Nor yet are they willing that the judgment restraining and enjoining them from further litigation against

these defendants over the titles to these properties should be allowed to stand.

Yet what are the facts? The defendants set forth their title by deed from their mother. The law gave the plaintiffs a replication without pleading to this asserted title. They were before the court. To prevail, they must establish the infirmity and insufficiency of this written instrument. It was not only their right, but it was their duty so to do. In evidence and in argument they attack the deed in every conceivable way—nonexecution, nondelivery, fraud in its procurement, forgery by implication, undue influence. Under what circumstances was this evidence addressed to and admitted by the trial court? It is shown by the record as follows:

"Mr. Lezinsky: In order to get this record straight, your Honor, I think if your Honor please, we are entitled to introduce now in evidence in this cause any evidence which will show that this deed was not signed, any evidence which will show that this deed was procured by fraud, any evidence which will show that this deed was procured by menace, undue influence or misrepresentation.

"The Court: Unquestionably so—granted.

"Mr. Lezinsky: Also any evidence which would show what the intention was, or if there was any intention whatever on the part of Tobe Funkenstein to make any deed to these defendants at any time whatever.

"The Court: Granted."

There is scarcely a page of the voluminous brief presented to this court on the appeal from the order refusing to grant a new trial that does not contain either some direct argument as to the fraud of these defendants and their witnesses in procuring the deed, or some innuendo to the same effect.

In another branch of this litigation where, notwithstanding the injunctive order against so doing, Arturo Wolf attempted by a new action to litigate the questions of fraud, and was cited, therefore, in contempt of the injunction in this case, this court said in relation thereto: "Furthermore, the injunction herein granted was not in fact incidental to the main relief sought. It was a substantial and inherent part of the relief. The plaintiffs and defendants were seeking to have title quieted against each other." (*Wolf* v. *Gall*, 174 Cal. 140, [162 Pac. 115].) At that hearing the same contention was made as is here advanced, that the findings

of the court were without the issues, and the decision is determinative against the contention. It is abundantly settled that under issues framed as here, the plaintiffs could, as their attorney represented to the court, overcome the effect of the deed and so destroy its validity upon either equitable or legal ground. (*Moore* v. *Copp*, 119 Cal. 436, [51 Pac. 630]; *Johnson* v. *Taylor*, 150 Cal. 201, [119 Am. St. Rep. 181, 10 L. R. A. (N. S.) 818, 88 Pac. 903]; *Hermosa Beach Land etc. Co.* v. *Law Credit Co.*, 175 Cal. 493, [166 Pac. 22].) Here, as in those cases, these defendants sought a decree determining that the plaintiffs had no right or claim in or to the property or any part thereof, establishing full and complete title in themselves, and enjoining the plaintiffs from ever asserting any further claim thereto.

It is finally urged that the court fell into error in failing to find upon the question of title by prescription tendered by defendants' answer. Manifestly that failure in no wise injures this appellant if the finding of record title in the defendants and the decree establishing the same are good. (*Smith* v. *Smith*, 173 Cal. 725, [161 Pac. 495].) To this consideration we pass in the appeal No. 7592.

Tobe Funkenstein, a widow, and the mother of plaintiffs' father, married Julius Funkenstein and the four defendants are the issues of that marriage. The Funkensteins lived in San Francisco, where the father and his eldest son Edward engaged in the real estate business under the firm name of J. Funkenstein & Son. Tobe Funkenstein brought no property to the matrimonial community. The firm of Funkenstein & Son prospered. The father bought real property, and when he died this property had been conveyed to his widow. The four children were adults and were all living under the parental roof. They continued so to live after the death of their father. Mrs. Funkenstein was uneducated and unversed in business. Her activities were in the home. During her husband's life he and his son Edward had managed all of the business affairs. After her husband's death her son Edward continued to do so and to conduct business under the original firm name. The bank account in the name of J. Funkenstein & Son was the only bank account which was ever maintained in the lifetime of the father, and was the only one maintained after the father's death. The son attended to all of the business affairs—renting, leasing, in-

surance, mortgages, etc. About two months after the father's
death the mother executed the deed in controversy to the four
children, resident under her roof. The circumstances of its
execution are in brief as follows: William H. Sharp and his
son William B. Sharp, attorneys at law, had been the attor-
neys of the father in his lifetime. William H. Sharp had
died. William B. Sharp continued in the practice of the law.
Mrs. Funkenstein knew him and his father before him. She
sent for him and told him what disposition she desired to
make of her property, that she desired to give it to her four
children, respondents herein. Under her instructions he pre-
pared the deed. She had known him from childhood and
called him "Willie"—trusted him as the family had trusted
his father before him. He prepared the deed expressly as
she directed. The nature of this deed of gift was fully ex-
plained to her by Mr. Sharp; that to make it effective she
must part with title by delivery of the deed, and that in so
parting with title she would lose ownership, management,
and control of the property, and would have nothing further
to say in regard thereto, and Mrs. Funkenstein replied that
her husband was dead, she knew nothing about business mat-
ters, and did not care to have any bother with the manage-
ment and control of the property. Mrs. Funkenstein could
not write. She made her mark, a court commissioner, Judge
Joachimsen, also a personal friend, taking her acknowledg-
ment and writing her name, to which she affixed her mark.
Judge Joachimsen bears testimony to Mrs. Funkenstein's full
understanding of her act. The deed thus signed and ac-
knowledged was handed to her and she in turn gave it to her
son Edward, saying to him, "Now, Ed, the property is
yours." Newman Wolf, her son by the former marriage,
had proved at least improvident if not dissolute. In refer-
ence to that son Mrs. Funkenstein said to Mr. Sharp that
she proposed to continue to supply her son Newman's wants,
but if she should die before he did, to impress upon her son
Edward that he should carry out the same arrangements for
Newman's support. The son Edward took and kept posses-
sion of the deed and continued in the management and con-
trol of the properties. The family lived as before. Mrs.
Funkenstein's monetary needs were not large. They em-
braced her charitable donations, her gifts to her son Newman,
and a small amount for pin money, all of which she received.

While the deed was not placed of record, no concealment of its existence was made, and in some instances the children joined in the mortgage or mortgage notes given on the property.

It would unduly and uselessly prolong this discussion, it would extend this opinion into the lengths of the briefs, to discuss, as appellant seeks to have us do, the asserted conflicts in the evidence, to analyze the inferences of unfair dealings, fraud, and forgery which we are asked to draw. Our province as a court of review is ended when it is shown that there is clear and substantial evidence to support a finding which the trial judge has made, and such evidence, as has been indicated in the foregoing outline, is abundantly present in this case. Giving the utmost weight to all that can be justly claimed touching the acts, disclosures, or nondisclosures of these defendants, and in especial to the argument that the course of conduct of these defendants in relation to the property was at variance with their contention that they were the owners thereof, all this at most raises but a conflict in the evidence and is not sufficient to overcome the finding of due execution, transfer, and delivery of the deed by which Mrs. Funkenstein conveyed to her children all of her title in her property. (*Follmer* v. *Rohrer*, 158 Cal. 757, [112 Pac. 544]; *Smith* v. *Smith*, 173 Cal. 730, [161 Pac. 495]; *Gernon* v. *Sisson*, 21 Cal. App. 123, [131 Pac. 85].) The record is replete with exceptions to the rulings of the court upon evidentiary matters. It would be a fruitless labor to review them all. But few of these matters call for specific attention. A writing expert was being interrogated in the apparent effort to bring forth from his examination of the cross made by Mrs. Funkenstein in attestation of the genuineness of her signature that the mark was made by somebody else, or that somebody else directed the pen. We do not perceive, nor are we told, how an expert in handwriting could bear evidence upon the matter, and can quite understand the court's remark in ruling upon it—"Whether or no somebody else held the pen, I draw the line there, I can't stand for it." An effort was directed to show by expert testimony that one of the defendants, Charles F. Gall, had prepared the deed, which was typewritten, and it was sought to show by a purported expert on typewriting, not that the deed had been typed on a particular kind of machine, but that it had been

typed upon a particular kind of machine by the defendant, Charles F. Gall. Of course, typewriting is not handwriting. (*Estate of Dreyfus.* 175 Cal. 417, [165 Pac. 941].) Expert testimony is allowed under our code concerning the handwriting of a person. (Code Civ. Proc., sec. 1870, subd. 9.) But in addition to this it was immaterial whether or not Charles F. Gall did type the deed, and, assuming for the moment that there are characteristics in typewriting which would enable an expert to say who had or had not done a given piece of work, the inquiry was unimportant to the case. A great number of these objections are based upon the court's asserted refusal to admit evidence declared to be admissible in *Williams* v. *Kidd,* 170 Cal. 631, [Ann. Cas. 1916E, 703, 151 Pac. 1]. The complaint is not well founded. The trial court opened the door wide to all legitimate evidence bearing upon the declarations and conduct of Mrs. Funkenstein in reference to the properties before and after the making of the deed, and also to the acts, conduct, and declarations of the respondents in relation thereto.

The judgment and order appealed from are therefore affirmed.

Melvin, J., and Lorigan, J., concurred.

Hearing in Bank denied.