[Civ. No. 4022.   Third Appellate District.—March 27, 1930.]

ELLEN E. MERRITT, Respondent, v. JOHN REY, Administrator, etc., Appellant.

702

O'Hara, Hatch & Pope for Appellant.

Percy E. Towne for Respondent.

THOMPSON (R. L.), J.—This is an appeal from a decree quieting title to an apartment house and lot in Vallejo which was conveyed to the respondent by a gift deed from her sister. It is claimed the evidence fails to show a valid delivery of the deed.

Mary J. Kelly held title to the family home of her parents situated at Vallejo, which was conveyed to her by a gift deed from her mother in October, 1906. The property was valued at $3,500. She married John Rey April 14, 1909. The respondent, who is the sister of Mrs. Rey, was formerly named Ellen E. Jahn. She lived in San Francisco. There was a close bond of attachment between these sisters. The homestead was rented and Mary Kelly lived with her brother Frank at Vallejo. The day before the wedding Mary Kelly summoned her sister to Vallejo and informing her of the proposed marriage, said: "I am going to transfer my

property over to you as a deed of gift. . . . I want the property to stay in the Kelly family, and you are entitled to the property, and I want to deed it to you for the kindness you have shown me all your life. . . . She told me that . . . she wanted to deed that to me before she was married because she did not want her husband to have any of that property that belonged to my father and mother.'' They went together to the office of a conveyancer named James O'Hara, who drew the deed reciting the considération to be that of ''love and affection.'' The deed was then handed to the grantee by either the grantor or the conveyancer and she handed it back to Mr. O'Hara ''for safe keeping,'' because, as she said, ''I had no deposit box; I had no place to keep the deed.'' He kept the deed in his safe until about two years later, when, at the request of the grantor, he sent it to the grantee accompanied with the following letter:

''Vallejo, California, February 18th, 1911.
''Dear Mrs. Jahn:

''Your sister requested me to forward the enclosed (deed) to you. I suppose she saw you in reference to the same.

''Very truly yours,
''James V. O'Hara.''

The respondent kept the deed in her own safe deposit box until after the death of her sister, which occurred March 18, 1926. She then recorded it March 20, 1926.

The foregoing transaction respecting the execution and delivery of the deed is substantially corroborated by Mr. O'Hara. The object and fact of the transfer as above related were corroborated by Miss Katie Callen, a life-long friend of the grantor, who related statements frequently made to her by Mary Kelly.

In the execution and delivery of this deed, it was understood by the parties to the conveyance that the grantor reserved the use and benefits of the property during her lifetime. From all the conversations and conduct of the parties with relation to the property it seems clear that the transfer of title was made absolute, subject, however, to the reservation of a life estate in the grantor. After the marriage of Mary Kelly and John Rey they lived with her brother Frank at Vallejo for some time, paying him rent for their apartment. From time to time the homestead,

which is involved in this appeal, was substantially improved at an expenditure of several thousand dollars. At the time of the death of Mrs. Rey the value of the property had increased to $10,000. It was converted into a four-flat apartment house. For several years it was rented for $65 or more a month. Mary J. Rey paid all the taxes, insurance and cost of improvements, which expenditures she told her sister were eventually repaid by the income from the property. In making the improvements and maintaining the property during the seventeen years which 'elapsed between the time of the execution of the deed and the death of the grantor, she borrowed money from time to time, securing the several loans by mortgages upon this property. In 1910 she and her husband joined in a mortgage to the First Savings Bank of Vallejo to secure a loan of $1600. This mortgage was subsequently renewed in January, 1914, to secure the balance of $1400. In both of these mortgages it was recited that the property was "the separate property of Mary J. Rey." In 1917 a loan of $2,500 from the Central Bank of Vallejo was also secured by a mortgage on the same premises. In December, 1922, Mrs. Rey was ill. She still owed the Central Bank $400. Mr. Tarmey, the manager of this bank, testified that Mr. Rey wanted to borrow the additional sum of $1,000. It was agreed that the respondent would advance sufficient money to pay off the obligation to the bank and also furnish Mr. Rey with the additional sum of $1,000. It developed during the interview that Mrs. Rey was already indebted to her sister for a balance of $500. Mr. Tarmey advised the spouses to execute a mortgage upon the same premises for the entire indebtedness amounting to $1900. This was done. Nothing was said about the existence of the gift deed. About the time the last loan was negotiated and while Mrs. Rey was ill, she told her sister that Mr. Rey was worrying her about conveying the property to him and that she was "uneasy." In reply to this, the respondent testified: "I told my sister that if it would make peace in the family, and would make Mr. Rey and her happier, I would deed it back to her. My sister said she would not listen to anything of the sort." A reconveyance was not made.

The appellant, as the duly qualified administrator of the estate of Mary J. Rey, deceased, contends that, (1) the evidence shows a failure to deliver the deed or an intent on the part of the grantor to then pass the title to the grantee, (2) the conduct of the respondent in failing to record her deed and in permitting the grantor to continue to enjoy the use and benefits derived from the property and the mortgaging thereof estops the grantee from asserting title thereto, (3) appellant held title adversely to the grantee, and (4) the statute of limitations bars this action.

We are of the opinion that none of these claims is well founded. These problems are all merged in the question as to whether title was actually vested in the grantee by the deed of conveyance. While there is a conflict of testimony regarding the delivery of the deed and affecting the intent of the grantor to presently convey title to the property, the findings and judgment are amply supported by the evidence. The question regarding the intent of the grantor in executing and leaving the deed with the conveyancer and as to whether she thereby parted with all control over the instrument and then actually transferred title to the grantee are problems of fact to be determined by the court and its solution will not be disturbed on appeal where there is substantial evidence to support the conclusions. (*Moore* v. *Trott,* 162 Cal. 268 [122 Pac. 462]; *Hefner* v. *Sealey,* 175 Cal. 18 [164 Pac. 898]; *Hodoian* v. *Garabedian,* 79 Cal. App. 762, 769 [251 Pac. 227].) Even though a doubt may exist as to the absolute delivery of the deed at the time when it was first left with the conveyancer, there can be no doubt of the grantor's complete surrender of all control over the instrument when, at her direction, it was subsequently sent by the conveyancer to the grantee, who thereafter retained sole and complete dominion over the document until it was recorded after the death of the grantor. The very possession of the deed by the grantee creates *prima facie* evidence of both an absolute delivery and intent to then vest in the grantee the title to the property therein described. (*Stewart* v. *Silva,* 192 Cal. 405 [221 Pac. 191]; *Hodoian* v. *Garabedian,* *supra;* 8 R. C. L. 999, sec. 62; 2 Tiffany on Real Property, p. 1750, sec. 461.)

■ The fact that the grantor improved the property and increased its value, that she paid the taxes, insurance and cost of improvements and appropriated the income therefrom may reasonably be reconciled with her declaration that she wished to reserve the use and benefit of the property during her lifetime. ■ There is now in America no legal obstruction to the conveying of title to real property which is to be enjoyed by the grantee only at the death of the grantor. Under such circumstances the grantor will be regarded as presently conveying the title subject to the reservation of a life estate therein. (Sec. 767, Civ. Code; *Ripperdan* v. *Weldy*, 149 Cal. 667, 674 [87 Pac. 276]; 1 Tiffany on Real Property, 2d ed., p. 551, sec. 159.)

■ While oral testimony is admissible for the purpose of determining the intent with which the grantor relinquished her custody of the deed (*Williams* v. *Kidd*, 170 Cal. 631 [Ann. Cas. 1916E, 703, 151 Pac. 1]; *Hodoian* v. *Garabedian, supra*), after the delivery of the deed has been adequately shown, the grantee takes the title free from all conditions which are not expressed therein. (*Mowry* v. *Heney*, 86 Cal. 471 [25 Pac. 17]; *Blackledge* v. *McIntosh*, 85 Cal. App. 475, 483 [259 Pac. 770]; *Weldon* v. *Lawrence*, 76 Cal. App. 530, 535 [245 Pac. 451].) ■ While it was, therefore, proper to consider the reservation by the grantor of the use and benefits derived from the property during her lifetime in order to determine whether she intended to presently pass the title to the grantee, this situation is not necessarily in conflict with the theory of an absolute conveyance of title and is insufficient upon which to upset the findings of the court to the effect that title actually did pass to the respondent. ■ Nor is the fact that the grantor assumed the right to subsequently mortgage this property upon several occasions inconsistent with the absolute transfer of the title. There was no legal obstacle to the grantor mortgaging her life interest. In the case of *Brandt* v. *Brandt*, 85 Cal. App. 720 [260 Pac. 342], a deed of gift which was executed and delivered in escrow, was held to convey absolute title to the grantee in spite of the fact that the grantor subsequently executed five different mortgages on the property and attempted to deed it to another grantee. ■ The circumstance most favorable to the contention of the appellant in the present case was the fact

that the grantee permitted the mortgaging of this property to herself to secure her loan of $1900. Even this transaction is, however, not conclusive evidence of a failure to actually convey title. It is a mere circumstance · to be weighed for the same purpose that the other mortgages were considered in determining the intent of the grantor in executing and delivering the deed of conveyance. The facts of this case do not conclusively establish either a failure to transfer the title on the part of the grantor nor estoppel on the part of the grantee. There is substantial evidence to support the judgment on both of these issues.

The failure to record the deed had no particular significance in the present case. An unrecorded deed is valid as between the parties and as to all those who have notice thereof. (*Blackledge* v. *McIntosh, supra;* secs. 1213 and 1217, Civ. Code; *Lewis* v. *Brown,* 22 Cal. App. 38 [133 Pac. 331].)

So, likewise, the question of adverse possession is one of fact to be determined by the circumstances and conduct of the parties. Assuming that the evidence in the present case adequately supports the finding of an absolute conveyance of title to the grantee, the use or occupancy of the premises by the grantor will be deemed to have been subject to the legal title of the grantee. (Sec. 321, Code Civ. Proc.; 2 C. J. 143, sec. 246; *Gernon* v. *Sisson,* 21 Cal. App. 123 [131 Pac. 85]; *Wolf* v. *Gall,* 176 Cal. 787, 792 [169 Pac. 1017]; 2 Tiffany on Real Property, 2d ed., p. 1932, sec. 503.) It is true that a grantor may acquire title by adverse possession pursuant to sections 1006 and 1007 of the Civil Code, against his grantee in spite of a preceding deed of conveyance, where he retains hostile possession of the premises openly and notoriously asserting title thereto. (*Baker* v. *Clark,* 128 Cal. 181, 187 [60 Pac. 677]; *Lord* v. *Sawyer,* 57 Cal. 65.) There is, however, no evidence in the present case to support such a claim. The grantor never asserted title to this property hostile to the grantee after her execution and delivery of the deed to her sister.

It is contended that this action is barred by the provisions of section 318 of the Code of Civil Procedure on the ground that the grantee's predecessor in title was not actually ''seized or possessed of the property in question

within five years before the commencement of the action.''
There is no merit in this claim. The evidence is without
conflict to the effect that the grantor was seised and in
possession of the property to the very time of her death,
enjoying the benefits of the life estate which she had specifi-
cally reserved therein.

The judgment is affirmed.

Plummer, J., and Finch, P. J., concurred.