[No. 435.   Decided May 26, 1892.]

ALVIN A. RICHMOND AND NANCY RICHMOND, *Respondents*,
v. SHELDON O. MORFORD, *Appellant*.

CONVEYANCES—WHAT CONSTITUTES DELIVERY OF DEED.

Where a grantor delivers a duly executed deed to a grantee with the understanding that it should take effect upon the payment of certain liens and the execution of a mortgage by the grantee, the deed becomes operative at once and passes title to the grantee absolutely. (STILES and DUNBAR, JJ., dissent.)

*Appeal from Superior Court, Yakima County.*

The facts are stated in the opinion.

*Frank H. Rudkin* and *Whitson & Parker*, for appellant.
*N. T. Caton* and *Reavis & Milroy,* for respondents.

The opinion of the court was delivered by

ANDERS, C. J.—This action was brought by respondents against appellant for the purpose of having declared void and canceled a deed of conveyance of certain town lots and agricultural lands, described in the complaint, executed by respondents to appellant, for the alleged reason that said deed was never delivered by them to appellant, and was fraudulently placed on record in the office of the county auditor of Yakima county, and constitutes a cloud upon the title of the respondents.   The trial resulted in a judg-

22—4 WASH.

ment for plaintiffs, and the defendant appealed to this court.

The deed was regularly executed by respondents, who were husband and wife, on July 24, 1890, and was left in the custody of appellant, the grantee therein named, who placed the same on record two days afterwards in the office of the proper county auditor. The instrument is still in the possession of the grantee, but respondents contend that such possession is wrongful and unauthorized, and that the deed was never delivered, and is therefore void. And this contention of the respondents raises the only question to be determined in this case. It is claimed by the respondents that, by the terms and conditions of the contract of sale, appellant was to pay the sum of $5,500 for the premises; that he should first pay the delinquent taxes, the interest due on a mortgage on the premises amounting to $36, and a judgment for $113, rendered against the grantors, and assume the payment of a mortgage debt of $1,200 on the premises in favor of the Lombard Investment Company; that the remainder of the purchase price was to be divided into three parts, one-third to be paid down, one-third in one year and one-third in two years, the last two payments to be secured by mortgage on the premises; that the deed was not to be delivered until the said mortgage was duly executed and delivered, and that the money to be paid down on the execution of the deed and mortgage was to be paid to John Richmond, a son of the grantors, and that the deferred payments, together with the mortgage to secure the same, were to be made to and in favor of said John Richmond. There is no dispute between the parties as to the amount of the consideration to be paid, nor as to its character, except that appellant claims that the respondent, Alvin A. Richmond, was indebted to him in the sum of $1,500, for services as an attorney, which it was agreed should be deducted from the purchase

price. This claim is denied by the respondents, though the testimony shows that appellant had acted as attorney for Richmond for a year or more, and had so represented him in a number of cases, both before justices of the peace and in the superior court, and for which services appellant claims he had not been paid. The parties also agree upon the terms of payment, but disagree as to when the first payment was to be made and the mortgage given to secure the deferred payments, appellant claiming that the deed was delivered with the intent to transfer the title, but that certain liens upon the land, the existence of which does not seem to be disputed, were to be satisfied before any payments were to be made or security given and that this has never been done. We are rather inclined to the opinion that neither the matter of the attorney fee nor that of the liens upon the lands described in the deed were mentioned by appellant, at least to Mrs. Richmond, either at or before the time of the execution of the deed. Both of the respondents testify in effect that nothing was said about the attorney fee or any liens other than the taxes and the Lombard Investment Company mortgage, at the time the agreement was made, and the appellant himself does not testify that the attorney fee was mentioned to Mrs. Richmond, but says that he stated to her what would be due upon the land after the deductions agreed upon should be made.

But what the original contract really was is unimportant except in so far as it may tend to throw light upon the question of the delivery of the deed. The testimony shows that after the negotiation touching the sale and purchase of the lands, which extended over a considerable period of time, was closed, the respondents went to the office of appellant for the purpose of executing the deed. After the instrument was prepared, the respondents then stepped into the office of a notary, which seems to have been in the

same building, and there duly signed and acknowledged
the deed, after which they returned to the office of appel-
lant. Shortly afterwards the notary brought in the deed
and handed it to appellant, who happened to be nearest
to him at the time. The mortgage was not then drawn, and
there is no testimony in the record showing that it was
asked for or demanded at that time. But, according to
the testimony of the respondents, Mrs. Richmond was at
first disposed to take the deed home with her, but it was
finally agreed between them to leave it in the desk of
appellant until the mortgage should be executed, so that
both instruments might go on record together.

Contrary to the testimony on the part of respondents,
appellant testified that the deed was not only delivered to
him absolutely, but that Richmond requested him to place
it upon record as soon as possible because he was afraid
one McCauslin, who had caused the premises to be at-
tached, would take still further steps to get hold of the
farm. Subsequent to the time of the execution of the
deed, appellant, with the knowledge and consent of respond-
ents, went upon the premises, and cut and stacked hay
thereon, and dug some potatoes, and, after the crops were
removed, he pastured the land until some time in the fol-
lowing fall. In the meantime, it appears that appellant
paid off the delinquent taxes, the $113 judgment, and the
interest upon the mortgage indebtedness assumed by him.
It also appears that the respondent, Alvin Richmond, after
he had executed the deed, informed the Lombard Invest-
ment Company by letter that he had sold the land em-
braced in its mortgage to appellant, and that the company
must thereafter look to him for payment of the principal
and interest. He also, as the testimony shows, told several
persons that he had sold the land to Morford. And it
further appears that on October 26, 1890, Richmond and
Morford, in the presence of John Richmond and Mr. Rud-

kin, attempted to effect a settlement of their differences, on which occasion, although a somewhat acrimonious dispute seems to have arisen between the parties, nothing whatever appears to have been said in regard to the non-delivery or invalidity of the deed. In fact, we nowhere find in the record that the respondents at any time previous to the commencement of this action ever claimed that the deed had not been delivered, although they often asserted that Morford had failed to make the payment and execute and deliver the mortgage according to his agreement.

Upon this state of facts, was there, in legal contemplation, a delivery of the deed in controversy? We think the question must be answered affirmatively. The mere possession of such an instrument by the grantee is *prima facie* evidence of delivery, which can be overthrown only by clear and convincing evidence. Otherwise, titles could be easily defeated, and no one could regard himself secure in the ownership of land. *Tunison v. Chamblin*, 88 Ill. 387; 1 Devlin on Deeds, § 294. But in the case at bar, the deed, which was absolute upon its face and completely executed and required no further act on the part of the grantors to give it validity, passed into the possession and under the power and dominion of appellant, with the knowledge and consent of respondents, and must, therefore, be held to have been delivered. *Dearmond v. Dearmond*, 10 Ind. 191; 1 Devlin on Deeds, § 314. "The delivery of a deed is complete," says Mr. Greenleaf, "when the grantor or obligor has parted with his dominion over it, with intent that it shall pass to the grantee or obligee, provided the latter assents to it, either by himself or his agent." 2 Greenl. Ev. § 297.

We would not be understood, however, as holding that in no case can a deed pass into the possession of a grantee without becoming operative. It may be handed him for inspection merely, or to await further execution by another

party, without taking effect as a valid conveyance. 1 Devlin on Deeds, § 271. And in *Gilbert v. North American Ins. Co.*, 23 Wend. 44, 35 Am. Dec. 453, cited by respondents, it was held that a deed placed in the hands of the grantee for the sole purpose of being transmitted to a third person to be held by him as an escrow was not thereby delivered. But in that case the grantee had faithfully executed his trust, and the deed was in the hands of the depositary selected by the parties, and no rights were claimed under it by the grantee. Furthermore, it was said by the court of appeals in *Braman v. Bingham*, 26 N. Y. 483, in reference to that case, that the result would, in its opinion, have been different had the contest been between the parties to the deed, and had the grantee kept possession and claimed a delivery to himself. It can, therefore, hardly be claimed that that case is an authority in support of the contention of respondents; and that is the only case cited bearing in any direct manner on the question under consideration, in which the facts are at all like those of this case. We think, however, that the law applicable to this case was correctly stated by BRONSON, J., who delivered the opinion of the court, and who said:

" If the grantor do not intend that his deed shall take effect until some condition is performed or the happening of some future event, he should either keep it himself, or leave it with some third person as an escrow, to be delivered at the proper time. If he deliver it as his deed to the grantee, it will operate immediately without any reference to the performance of the condition, although such a result may be contrary to the express stipulation of the parties at the time of the delivery. This is one of the cases in which the law fails to give effect to the honest intention of the parties, for the reason that they have not adopted the proper legal means of accomplishing their object."

The only legitimate conclusion we are able to deduce from all the facts and circumstances before us is, that the

respondents delivered the deed to appellant to take effect upon the performance by him of certain conditions. And such being the case, the instrument at once, in law, became operative, and passed the title to appellant absolutely, without regard to any agreement that may have existed between the parties.     See also *Lawton v. Sager*, 11 Barb. 349.

It becomes unnecessary to determine the question as to the sufficiency of the complaint. The judgment of the court below is reversed, and the action dismissed.

Hoyt and Scott, JJ., concur.

Stiles, J. (*dissenting*).—I cannot assent to the conclusions of the majority in this case, because I do not find in the facts any evidence of a present intention in the mind of either party to the deed that it should be delivered, or have any other treatment than to be left lying in the desk of the appellant until his convenience should serve to execute the mortgage, with which was to go the payment of the balance of the purchase money. Between ordinary persons, perhaps, the circumstances would require the decision made in this case. But the parties here are attorney and clients, and the evidence shows, without contradiction, that the means used to overcome the disinclination of Mrs. Richmond to leave the deed in appellant's office was the declaration of her husband that it was "strange if he couldn't trust his lawyer until the next week." I cannot but regard the recording of the deed as an afterthought, conceived to aid appellant in securing a hold on the land of respondent, for the purpose of enforcing his claim for attorney's fees as an offset to the cash payment agreed upon; and, as between attorney and client, the court should not let any question of technical delivery stand in the way of placing the parties in *statu quo*, when it is confessed that no part of the consideration has been paid, and there is nothing but a bare lien to resort to.

Dunbar, J., concurs.