[Civ. No. 1056.   Third Appellate District.—May 8, 1913.]

GEORGE L. LEWIS, Respondent, v. MAY BROWN, Appellant.

DEEDS—PAROL RESERVATION OF LIFE ESTATE.—A grantor cannot reserve a life estate by oral agreement.

ID.—ESTATE GRANTED—ORAL EVIDENCE TO LIMIT OR QUALIFY.—Oral evidence cannot be considered, as against the written terms of a deed, for the purpose of limiting or qualifying the estate thereby granted or created.

ID.—DELIVERY—ORAL AGREEMENT NOT TO RECORD DEED UNTIL DEATH.—When a deed is delivered to the grantee, with an oral understanding that it shall not be recorded until the grantor's death, the delivery is nevertheless absolute, and the instrument takes effect discharged of the condition.

ID.—REQUEST NOT TO RECORD DEED UNTIL DEATH OF GRANTOR.—The mere request to the grantee not to cause the grant to be recorded until after the death of the grantor, cannot, though in writing, create in the grantor any interest in the property, where the deed is absolute on its face and is delivered to the grantee.

APPEAL from a judgment of the Superior Court of Sonoma County.   Thos. C. Denny, Judge.

The facts are stated in the opinion of the court.

R. L. Thompson, and J. M. Thompson, for Appellant.

W. F. Cowan, for Respondent.

HART, J.—This is an action to quiet title to certain real property, consisting of a lot and improvements, situated at Camp Meeker, in Sonoma County.

The suit was originally brought by one Clara Cook, daughter of George L. Lewis, the respondent, but the latter, for reasons which will subsequently be made to appear, was substituted as plaintiff in the place of said Clara Cook.

The complaint alleges that the plaintiff is, and for a long time prior to the institution of this action has been, in possession of the premises described therein and "claims title in fee to the said premises, and that said defendants claim an estate or interest therein adverse to the plaintiff; that the claim of said defendants is without any right whatever and that said defendants have no estate, right, title or interest whatever in said lands and premises, or any part thereof."

The answer of the defendant, May Brown, denies that the plaintiff "is now, or ever has been the owner, or in the possession of the land and premises described in the complaint," and admits that the defendant, May Brown, claims an estate and interest in said property. The answer further avers that the plaintiff, George L. Lewis, on the thirty-first day of October, 1908, being the owner in fee of the property in controversy, for a valuable consideration, conveyed by deed said property to the defendant, and that said deed was duly recorded in the office of the county recorder of Sonoma County on the eighth day of October, 1909; that, on September 27, 1909, the plaintiff, "for some reason unknown to defendant, and without her knowledge or consent, made a deed by which he pretended to convey the said lands to plaintiff," referring to the original plaintiff; that "the said deed was made without any money or valuable consideration and with the knowledge of all parties thereto that this defendant was the owner in fee of said lands, and held said deed previously made and delivered to her by said George L. Lewis," etc.

The defendant, May Brown, also filed a cross-complaint in which, after the manner of her answer, she sets out her title to the land in dispute and the circumstances under which she acquired title thereto, and prays for a decree quieting her title to said land.

The answer to the cross-complaint denies the averments of the last mentioned pleading, and further alleges that the plain-

tiff, Lewis, is the father of the original plaintiff, Clara Cook, and that, because of the infirmities of old age and, therefore, of the uncertainty of the duration of his life, "and in order to avoid the expense of probate and to expedite matters concerning his said real estate," he, on the twenty-seventh day of September, 1909, being "the absolute owner in fee of the lands described in the pleadings herein," executed and delivered to his said daughter, Clara Cook, "for and in consideration of love and affection, a good and sufficient deed to the said lands . . . , reserving to himself a life estate therein."

The court found that, on the thirty-first day of October, 1908, George L. Lewis was the owner in fee of the property in controversy, and that, on said day, "for a valuable consideration, he made, signed, acknowledged an instrument in due form of a grant, bargain and sale deed, wherein and whereby it was purported to convey the said premises, above described, and which were in said deed so described, to the defendant, May Brown"; that Lewis, upon said day, handed and delivered said deed to the said May Brown, but that such delivery was with the understanding and agreement that Lewis should have the rents, income, and profits of said premises during his lifetime, and that "he should retain and reserve a life estate unto himself in said premises and that the remainder in fee after said life estate was to be vested in the said May Brown, and upon the further express understanding and agreement between the said George L. Lewis and the said May Brown that the said deed was not to be recorded until after the death of said George L. Lewis."

The judgment, following the findings, adjudges the fee in the property to be in the defendant, with a life estate therein to George L. Lewis, and enjoins the defendant and all persons "claiming or to claim under or through her" from asserting any right, title, interest, or claim in or to the said life estate or "from interfering with the possession of plaintiff therein."

This appeal is prosecuted by the defendant from so much of the judgment as adjudges that Lewis has a life estate in the property and enjoining the defendant and all persons from asserting or claiming any interest in or title to such life es-

tate and from interfering with Lewis's enjoyment of the possession thereof.

It is very clear, from an examination of the record, that the finding that Lewis reserved to himself a life estate in the property in controversy is entirely without support from the evidence and that, therefore, that portion of the judgment from which this appeal is submitted cannot be upheld.

There is nowhere in the pleadings any averment nor any language even remotely indicating that Lewis reserved or intended to reserve to himself a life estate in the property, so far as the conveyance thereof to the defendant is concerned. The deed to May Brown is absolute upon its face and, therefore, purports to convey to May Brown, without qualification, condition, or limitation of any nature whatsoever, the absolute fee in the property. Nor does the record disclose any competent evidence affording any reason or ground for the slightest inference that Lewis reserved to himself, out of the fee conveyed to May Brown, a life or any estate or interest in the property. Indeed, at the trial the important question of fact which seems to have constituted the single and only bone of contention between the parties and as to which there appeared to have been any disagreement between Lewis and Brown as to the transaction involving the former's conveyance of the property to the latter was whether he ever delivered the deed to her. That this was regarded as, and, indeed, virtually conceded to be, the single issue of fact before the court by plaintiff's attorney, is plainly shown by a certain statement made by him at the trial. Answering an objection to certain questions propounded by him to Lewis and whose purpose was to bring out an oral understanding which it was claimed was had between the parties contemporaneously with the execution and delivery of the deed that Lewis was to have the rents and income from the property during his life, counsel said: "I wish to state that the deed is not denied; the point we raise is that there was never any delivery of the deed."

It appears, however, that, over objection by counsel for the defendant, Lewis was permitted to testify that, when he executed the deed and apprised the defendant of its execution, he declared to her that it was his desire that she should not record the instrument until after his death, and in effect fur-

ther said that an interest in the property should remain in him during the remainder of his life. It was undoubtedly upon this testimony that the court based its finding that Lewis reserved to himself, out of the fee of the property granted by him to May Brown, a life estate therein. But, from the remark of counsel for the plaintiff, above quoted, in replying to the objections to this line of inquiry into the transaction, it is plainly evident that, when made, the court's rulings allowing that testimony proceeded entirely from the theory that it was addressed entirely and solely to the question of delivery. And, obviously, that was the only purpose for which it could legally have been allowed and received; for it is plainly manifest that an estate or interest in real property, other than a lease thereof for a period not to exceed one year, cannot be created by parol, and that to sustain the finding, educed, as most certainly it was, from parol testimony of the alleged fact that Lewis reserved to himself a life estate from the fee granted by him to the defendant, would, of course, be to sanction a direct violation of every rule governing the transfer and creation of estates or interests in real property.

The trial court found, upon sufficient evidence, that the deed, which, as seen, is absolute upon its face, was executed by Lewis and by him *delivered* to the grantee, May Brown. Indeed, the very claim of the plaintiff of a reservation of a life estate in the property necessarily concedes or presupposes a delivery or the due transfer of the fee to the defendant.

Section 1971 of the Code of Civil Procedure declares that "No estate or interest in real property, other than for leases for a term not exceeding one year, nor any trust or power over or concerning it, or in any manner relating thereto, can be *created,* granted, assigned, surrendered, or *declared,* otherwise than by operation of law, or a conveyance or *other instrument in writing,* subscribed by the party *creating,* granting, assigning, surrendering, or *declaring* the same, or by his lawful agent thereunto authorized by writing."

Apart from any consideration of the elementary rule, which has been adopted into our codes, interdicting the modification or varying of the vital terms of a writing by parol, it is obvious that any attempt either to restrict or enlarge the scope or

effect of an indenture transferring real property by an oral agreement is expressly prohibited by the foregoing section. In other words, oral testimony cannot be considered as against the written terms of a deed for the purpose of limiting or qualifying the estate thereby granted or created.

Nor is it important, even if it be true, that Lewis delivered the deed to the grantee with an oral understanding that the instrument should not be filed for recordation until after his death. Section 1056 of the Civil Code provides that a "grant cannot be delivered to the grantee conditionally. Delivery to him, or to his agent as such, is necessarily absolute, and the instrument takes effect thereupon, discharged of any condition on which the delivery was made." "If," as is well said, in *Richmond* v. *Morford,* 4 Wash. 337, [30 Pac. 241], "the grantor does not intend that his deed shall not take effect until some (oral) condition is performed or the happening of some future event, he should either keep it himself, or leave it with some third person as an escrow, to be delivered at the proper time. If he deliver it as his deed to the grantee, it will operate immediately, without any reference to the performance of the condition, although such a result may be contrary to the express stipulation of the parties at the time of the delivery." Or, as Mr. Devlin, in his excellent treatise on deeds (sec. 314) thus states the rule: "Whether a deed has been delivered or not is a question of fact upon which, from the very nature of the case, parol evidence is admissible. But whether a deed, when delivered, shall take effect absolutely or only upon the performance of some condition not expressed therein, cannot be determined by parol evidence. The deed in this case being absolute upon its face, and having been delivered to the grantee himself, took effect at once. It could not have been delivered to take effect upon the happening of a future contingency, for this would be inconsistent with the terms of the instrument itself. Without regard, therefore, to any understanding which may have existed at the time the deed was delivered, it must be held to be an absolute conveyance, operative from that time." (See *Lawton* v. *Sager,* 11 Barb. (N. Y.) 349, 351; *Fairbanks* v. *Metcalf,* 8 Mass. 230; *Alexander* v. *Wilkes,* 79 Tenn. (11 Lea), 221, *Jordan* v. *Pollock,* 14 Ga. 145; *Mowry* v. *Heney,* 86 Cal. 471, [25 Pac. 17]; *Riley* v. *North Star Min. Co.,* 152 Cal.

549, [93 Pac. 194] ; *Hammond* v. *McCullough,* 159 Cal. 639, [115 Pac. 216] ; *Whitney.* v. *Dewey,* 10 Idaho, 63, [69 L. R. A. 572, 80 Pac. 1117].)

Even if the testimony upon which the court based its findings and the judgment with reference to the reservation of a life interest by Lewis were legal or competent, it would be wholly insufficient to support the findings and judgment in that particular. The mere request to the grantee not to cause the grant to be recorded until after the death of the grantor could not, even if in writing, have the effect of creating in the grantor a life estate or any interest in the property granted, where the deed is absolute upon its face and has been delivered to the grantee, and, as seen, it was almost entirely upon the mere alleged verbal request by Lewis to the defendant not to record the deed that the court predicated the findings and that portion of the judgment to which objection is made on this appeal.

Counsel for the appellant have requested that this court direct a modification of the judgment in accordance with their theory of the case and with which theory the views herein expressed harmonize. We can see no reason why it should not be within the power of an appellate court, in a case where the finding complained of is distinctly severable from the rest, and is not supported by any evidence whatever, and that the case is such as not to be susceptible of improvement in the particular as to which complaint is made, to direct the court below to strike out such unsupported finding and modify the judgment accordingly. (Hayne on New Trial and Appeal, sec. 296, subd. 2.) But, while it appears clear to us that there can be no competent evidence available to the plaintiff to support the finding as to the reservation of a life estate from the fee granted to May Brown, we feel some reluctance about complying with the request of appellant, since it is well settled that an appellate court cannot make a finding and that such an order as is asked of this court might seem to impinge upon that rule and thus cause confusion as to the correct practice in such a case. However, it is manifest that, unless there is in existence and procurable competent proof of the fact involved in the finding to which objection is here made, the court below should avoid the trouble and expense of a new trial by striking out the unsupported finding and so

modifying the judgment as that it will conform to the rest of the findings and to the views and conclusion of this court.

The judgment is reversed.

Chipman, P. J., and Burnett, J., concurred.