[Civ. No. 6870. Third Dist. Mar. 2, 1943.]

MARY ANN LABADIE, Respondent, v. THOMAS W. LABADIE, Appellant.

Ralph H. Lewis for Appellant.

Ralph McGee, Albert J. Brown and Evan J. Hughes for Respondent.

THOMPSON, J.—The plaintiff brought suit against her son, Thomas W. Labadie, to quiet title to land in Amador County. In 1924 she joined her husband, Peter Labadie, in a deed to their son. The deed was not delivered, but was placed in their safe deposit box in a bank. At the time of the death of Peter Labadie in December, 1932, the defendant procured the deed and took it to the plaintiff's home. Eight years later he recorded it, claiming title to the land. The trial court held that the deed was void for lack of delivery. Findings were adopted favorable to the plaintiff. A judgment was rendered quieting title in plaintiff. From that judgment the defendant has appealed.

The plaintiff and her husband, Peter Labadie, who had resided in Amador County for many years, were the parents of the defendant, Thomas W. Labadie, and of two married daughters, Mrs. Mae Matulich and Mrs. Lizzie McBeth. The parents owned certain farming land in that county, and some lots in the town of Plymouth. The land formerly stood in the name of Peter Labadie. September 16, 1918, he executed and delivered to his wife a deed to three tracts of land, including the two parcels which are involved in this suit to quiet title. That deed was delivered and then placed in the safe deposit box in a bank, jointly held by the spouses. It was recorded January 4, 1933, after the death of the husband.

March 5, 1924, Mr. and Mrs. Peter Labadie went to a notary public by the name of Minnie Provis, at Sutter Creek, who, at their request, prepared three documents which were then executed. One was a duplicate deed of conveyance from Peter Labadie to his wife of the same property described in the previously mentioned deed between the same parties, dated September 16, 1918. The second instrument was a deed from

Peter Labadie and his wife to their son, Thomas, conveying to him the two farms in Amador County, included in the former deeds to the plaintiff. These two farms consist of 160 acres and about 480 acres of land, respectively, which are the same tracts of land described in the complaint. The third instrument is in the nature of instructions to their son Thomas, requesting him to make specified payments of money to their daughters and to one other relative. It reads in part:

"Sutter Creek, Calif., March 5th, 1924.
"Mr. Tom W. Labadie, Sacramento, Calif.

My dear Son:—

"Realizing the uncertainty of life and reposing the most hearty confidence in you, we have this day executed a deed conveying to you all our real estate, consisting of both the Norman and the Butler Ranches, and arrangements will be made so that *in the event of our both passing away,* what funds we may have in bank may also be drawn by you. Our idea in doing this is that you will, either from the cash we may leave or from your private funds, pay your sisters and niece the following sums of money: . . ."

These three instruments were enclosed in an envelope and were taken by Peter Labadie and his wife to their home and subsequently placed in their safe deposit box in the bank at Plymouth. Miss Provis testified that she had the impression that the deeds "were to be held . . . by Mr. and Mrs. Labadie in some safe place for delivery upon *her* death." She said that the grantors were to have the rents, issues and profits from the land as long as they lived. The defendant testified that he never saw his deed until he took it from the safe deposit box two weeks before his father's death. The grantors exercised absolute control over the land in question during the lifetime of Peter Labadie. November 27, 1932, he suffered a stroke of paralysis, and was taken to the home of his daughter Mrs. Matulich, who lived near Drytown in Amador County, where he died December 14, 1932. There is evidence that he was not able to transact business affairs during that illness.

The defendant testified that he was present at his sister's home during his father's last illness, which lasted only two weeks; that after his father was stricken he went to the safe deposit box at his father's request, got the papers from the box and brought them home. He stated that he gave them

to his mother, and "my mother gave me the deeds, and she also gave me my deed. She said it is a deed from father and her to me; said the instructions, what to do, are in the deeds, or with the deeds"; that he took the deeds and other documents with him and placed them in his own safe deposit box in a bank in Sacramento, in which city he then lived. The defendant recorded the deed from his father to his mother on January 4, 1933. He retained the deed from his parents to himself, covering the property which is involved in this suit, until November, 1940, which he then recorded without the knowledge or consent of his mother. The following day he instituted proceedings in the Superior Court of Sacramento County to have his mother declared incompetent. That petition was denied.

The plaintiff testified that she remained at the home of her daughter, Mrs. Matulich, and cared for her husband during his last illness in 1932; that she did not hear her husband request their son Thomas to get his deed or any of the other documents from the safe deposit box; that she had no knowledge of the fact that Thomas procured the instruments from the bank; that he never discussed those deeds with her. She positively denied that he ever handed her the papers or that she delivered to him the deed from herself and husband at that time or at any other time. The testimony of the plaintiff and the other corroborating evidence is very convincing that the deed from the spouses to their son, Thomas, was never delivered to him with the intention on the part of the grantors to part with the title to the property. It is also apparent that the deed in question was executed with the object of avoiding the necessity of probating the estate in the event of the death of both grantors, and that it was not intended to take effect until after the death of both spouses.

The plaintiff further testified that she continued to exercise absolute control over the property with defendant's knowledge of that fact, after the death of her husband, to the time of the commencement of this action. She leased one of the ranches described in the challenged deed on December 18, 1933, to W. J. Parsons for a term of five years for the annual rental of $300 payable to her in monthly installments. That rent was always paid to the plaintiff and the defendant never claimed a right to any portion of it. November 13, 1933, the plaintiff executed a general power of attorney to her son, Thomas Labadie, authorizing him to lease, sell, mort-

gage or convey all real property, and to handle all personal property, *in her name and for her use and benefit.* That power of attorney was recorded at the request of the defendant. August 3, 1935, nearly three years after the death of her husband, the plaintiff sold and conveyed to G. A. Wilds, a dwelling house and lot in the town of Plymouth, also included in the challenged deed which was previously executed by the spouses.

The court adopted findings favorable to the plaintiff in every respect. It was held that the deed dated March 5, 1924, from Peter and Mary Ann Labadie to the defendant is void for the reason that it was never delivered by the grantors with the intention of then conveying title to the land described therein. Judgment was thereupon rendered in favor of the plaintiff, determining that said deed was void for lack of delivery, and that title to the real property described therein be quieted in plaintiff. From that judgment the defendant has appealed.

 It is contended the findings and judgment are not supported by the evidence.

The findings and judgment are adequately supported by the evidence, to the effect that the plaintiff acquired title to the real property in question by means of the deed therefor which was duly executed by her husband, Peter Labadie, on September 16, 1918. That deed was recorded at the request of the defendant January 4, 1933, after the death of his father. It was received and read in evidence without objection. The case was tried on the theory, in behalf of both parties to the action, that this deed was valid and that it conveyed title to the plaintiff of the property described therein. After the execution of that deed it was kept in a safe deposit box in a bank in Plymouth, which box was held in joint tenancy by the grantor and the grantee, and to which both had access at all times. In the absence of evidence to the contrary, it is presumed that a deed which is duly executed is actually delivered on the date of the instrument, when it is found in the possession of the grantee, as it was in the present case, even though it was subsequently placed in the joint safe deposit box of the parties thereto. Upon the death of Peter Labadie that safe deposit box and its contents were in the sole control of the plaintiff. In fact, the defendant testified that he secured the documents from the safe deposit box and actually delivered them to his mother

who thereupon returned them to him. The plaintiff denied that statement, but the defendant's conduct at least recognized the right of his mother to the custody and control of those deeds. The plaintiff exercised absolute control over the property after her husband's death, as previously related. She said that, prior to his death, she sold and conveyed a portion of the Butler ranch, which was included in the deed to her. A duplicate of that deed from Peter Labadie to plaintiff was prepared at his request by the notary public and executed March 5, 1924, in the presence of his wife. The plaintiff and her husband went to the office of the notary public for that express purpose. The notary public testified that it was her impression that the instruments were to be held by them in some safe place, and that the deed to the defendant was to be delivered only upon the death of the plaintiff. It was considered by every member of the family that the land belonged to the plaintiff after the death of her husband.

 When a deed to real property is found in the possession of the grantee, as was the plaintiff's deed in this case, the presumption is that it was delivered at the time of its execution. (Sec. 1055, Civ. Code; *Marple* v. *Jackson*, 184 Cal. 411, 415 [193 P. 940]; *Stewart* v. *Silva*, 192 Cal. 405 [221 P. 191]; *Shaver* v. *Canfield*, 21 Cal.App.2d 734 [70 P.2d 507]; 9 Cal.Jur. 185, sec. 74.) Possession of a deed by the grantee creates prima facie evidence of title to the land described therein in the holder of the instrument. This is true even though the deed may be thereafter placed in a joint safe deposit box of the parties, and is not recorded until after the death of the grantor who, in the meantime, exercises acts of control over the property by collecting rent therefrom or mortgaging or conveying the real estate. (*Drummond* v. *Drummond*, 39 Cal.App.2d 418 [103 P.2d 217]; *Estate of Schmidt*, 49 Cal.App.2d 86 [121 P.2d 104]; *Shaver* v. *Canfield, supra;* 141 A.L.R. 312, subd. IV, note.) When a deed is actually delivered to the grantee, the fact that, upon request or otherwise, it is not recorded until after the death of the grantor does not impair the validity of the instrument. (*Lewis* v. *Burns*, 122 Cal. 358 [55 P. 132]; *Lewis* v. *Brown*, 22 Cal.App. 38 [133 P. 331].

 Under the circumstances of this case, there is ample evidence that the deed from Peter Labadie to his wife was actually delivered to her.

In view of the presumption of delivery of the deed from Peter Labadie to his wife in 1918, together with the corroborating circumstances, it would have been erroneous for the court to have held that deed to be void for lack of delivery since the appellant treated that deed as valid throughout the trial, and made no attack upon it on that ground. (*Thomas* v. *Fursman*, 177 Cal. 550 [171 P. 301]; *McDougall* v. *McDougall*, 135 Cal. 316 [67 P. 778].) See also, *People* v. *Daniels*, 25 Cal.App.2d 64 [76 P.2d 556].

Provided delivery of the deed was accomplished, it is immaterial that the deed was not recorded until after the death of the grantor, or even that the purpose of the transfer was to avoid the cost and delay of probating his estate. In 1 Devlin on Deeds, 3rd ed., p. 473, sec. 284, it is said in that regard:

"Whether a deed passes a title or not must be determined by its legal effect. If it has been executed and delivered its effect is determined by its language. When so executed and delivered its legal effect as to the passing of the title is not altered by the fact that one object of the transaction was to save the expense and trouble of administration upon the grantor's estate after his death. And where a grantor executed a deed for this purpose to his wife, the fact that she placed the deed after delivery where her husband equally with herself could have access to it, does not change its legal effect as a conveyance."

There is also ample evidence to support the findings and judgment of the court to the effect that the deed from Peter Labadie and his wife to the defendant, dated March 5, 1924, is void for lack of delivery. The appellant asserts that his possession of that deed presumes that it was duly delivered. But this presumption is rebutted by substantial evidence to the contrary. The defendant admitted that he never saw the deed from his mother and father until he took it from the safe deposit box in 1932 just before his father's death. The defendant did not possess a joint tenancy in that box. It was not under his dominion or control. He claimed that he secured the documents at his father's request, but asserted that he brought them home and delivered them to his mother. That fact was denied by the plaintiff. There is evidence that Peter Labadie was then suffering from a severe stroke of paralysis and unable to attend to business trans-

actions. The defendant took the instruments and placed them in his own safe deposit box in a bank in Sacramento, without the knowledge or consent of his mother. She was a co-grantor of the property described in that deed. She testified positively that she never agreed to a delivery of that deed to her son. On the contrary, she said that it was her intention and the intention of her husband that the deed to their son was not to take effect until after her death. For a period of about eight years after the death of Peter Labadie, the plaintiff used the real property described in that deed as though it were her own property, by selling and conveying a portion of it, by executing a five-year lease to one of the ranches to W. J. Parsons, and by collecting and appropriating all of the income from the property to her own use. The written instructions which accompanied the defendant's deed indicates that the title was not to pass except ''in the event of our *both passing away*.'' The defendant recognized that fact by failing to claim title to the property during that period of time, by failing to record his deed for eight years, and by permitting his mother to handle the property and enjoy the proceeds therefrom as though she owned the title.

The retaining of possession of the property by plaintiff and the exercising of acts of proprietorship over it by her are evidence of ownership and a lack of delivery of the deed. (*Donahue* v. *Sweeney,* 171 Cal. 388, 391 [153 P. 708] ; 9 Cal.Jur. 189, sec. 76.)

The judgment is affirmed.

Peek, J., and Adams, P. J., concurred.