[Civ. No. 15286.   Second Dist., Div. Two.   July 1, 1946.]

SECURITY-FIRST NATIONAL BANK OF LOS ANGELES (a National Banking Association), Plaintiff, v. E. ROBERT LEATART et al., Defendants and Respondents; A. L. LEATART, as Administrator, etc., Cross-Complainant and Appellant.

Russell H. Pray and Samuel J. Nordorf for Appellant.

Joseph A. Ball and Ben W. McLenden for Respondents.

WILSON, J.—This is a controversy among seven brothers, one being in opposition to the other six, concerning the division of the sum of $5,000.02. Since it is conceded by all parties that the fund should be divided equally among the seven individual litigants, the final judgment in the action will merely determine whether (1) each party shall receive his share directly from the fund now on deposit in court or (2) the entire amount shall be paid to the administrator of the estate of the mother of the parties who, after first deducting

his fees as administrator and the fees of his attorney and the other costs of administration, shall distribute the remainder in seven equal shares.

The litigants are the sons of Martha E. Leatart, who, on March 19, 1930, signed and acknowledged a grant deed to her seven sons conveying to them a parcel of real property in Los Angeles County. The deed contained no reservations, restrictions or conditions. She held the deed in her possession until July, 1944, when she delivered it to two of the grantees and at her request they had it recorded in the county recorder's office. She was taken to a hospital on August 18, 1944, where she remained until her death on October 16, 1944.

Some of her sons being unable to contribute their proportionate shares of the cost of her hospitalization and medical care, A. L. Leatart wrote a letter to his brothers, dated September 24, 1944, stating that he would "buy the property and pay $6,000 cash immediately and to pave the way for that deal and save time," he had had the property appraised. He suggested that the money be deposited in a bank in their mother's name "but with all seven boys as co-tenants on the deposit and for only two of the boys as co-signers on all checks" drawn against the fund for the payment of bills incurred for their mother's benefit and "with the stipulation that in the event there is any moneys left that it shall be equally divided seven ways and subject to withdrawal by each beneficiary." The arrangement suggested in the letter was accepted by all of the brothers. They executed a grant deed to A. L. Leatart conveying the property to him. The bank refused to accept the deposit upon the terms suggested in the letter and it was arranged that the fund should be placed in the names of two of the brothers who were authorized to sign checks in payment of their mother's expenses. Upon her death the amount now in litigation remained in the bank.

After Mrs. Leatart's death plaintiff bank was notified that some difficulties might arise among her sons as to the distribution of the fund, whereupon a complaint in interpleader was filed naming the administrator and all the brothers individually as defendants. Pursuant to an order plaintiff paid the money into court and was discharged from further liability. A. L. Leatart, as administrator of his mother's estate, filed a cross-complaint against the other defendants alleging that the fund should be distributed to him as ad-

ministrator and praying that his brothers be declared to have no interest therein except as to their respective distributive shares as heirs at law of their mother. Three of the brothers filed answers and cross-complaints, each asserting title to an undivided one-seventh interest in said fund, and the other three suffered their defaults ·to be entered upon the cross-complaint of the administrator.

The cause was tried and the court made findings of fact: (1) That the cross-defendants at all times treated and considered the money deposited with the bank as belonging to the decedent, Martha E. Leatart, and not otherwise; (2) that the cross-defendants had no right, title or interest in the fund except as to their distributive shares as heirs at law of the decedent; (3) that neither decedent nor her grantees intended that the deed should pass any beneficial interest during the lifetime of decedent; (4) that the grantees never claimed any right, title or interest whatsoever in or to the property or the proceeds of the sale thereof during the lifetime of decedent; (5) that prior to the commencement of the action cross-defendants were not the owners of an undivided one-seventh interest each in and to the fund on deposit and were not entitled to be paid from said fund. As conclusions of law the court found that the proceeds of the sale, which had been deposited by the bank with the clerk of the court, should be delivered to A. L. Leatart as such administrator. Judgment was entered accordingly.

A timely motion for a new trial was made by cross-defendants and was granted on the ground that the decision was against law. From said order the administrator has appealed. The evidence as a whole is insufficient as a matter of law to support the findings and judgment and the order must therefore be affirmed.

■ 1. *The effect of the unconditional grant deed from mother to sons.* Since the deed from Mrs. Leatart to her sons contained no condition or reservation and since a grant cannot be delivered to the grantee conditionally, it was absolute and conveyed the fee simple title to the grantees and took effect upon delivery, discharged of any condition upon which it was made and which was not expressed in the deed. (Civ. Code, § 1056; *Blackledge* v. *McIntosh*, 85 Cal.App. 475, 483 [259 P. 770]; *Lewis* v. *Brown*, 22 Cal.App. 38, 43 [133 P. 331]; *Burkett* v. *Doty*, 32 Cal.App. 337, 344 [162 P. 1042].

■■ If in parting with possession of a conveyance the grantor intends thereby to divest himself of title, there is an

effective delivery of the deed, and the solution of the question is grounded on the intention of the grantor, which is a question of fact to be determined by the trial court on all the evidence bearing thereon. (*Williams* v. *Kidd,* 170 Cal. 631, 638 [151 P. 1, Ann.Cas. 1916E 703].) ██ Oral testimony cannot be considered as against the deed for the purpose of limiting or qualifying the estate thereby granted. (*Lewis* v. *Brown, supra;* Code Civ. Proc., § 1971.) The legal effect of a deed delivered to a grantee is to vest title in him free from any condition, and its operation cannot be defeated by parol evidence of an intention on the part of a grantor that it would have an effect different from that apparent on its face. (*Mowry* v. *Heney,* 86 Cal. 471, 475 [25 P. 17].)

██ Even if the grant deed could be qualified by an oral agreement, the evidence fails to establish any intent that the grantees would hold title for the benefit of their mother. There is no conflict in the evidence in reference to the intent of the decedent in executing her deed, to wit, that it should become effective upon delivery, and there is no evidence to sustain the finding that the grantees never claimed any interest in the property during the lifetime of the grantor. The deed remained in the possession of Mrs. Leatart until July, 1944, when, according to the evidence given by one of her sons who had resided with her for fourteen years, she turned the deed over to him and one of his brothers and told them to have it recorded. He testified that she was not feeling well and "she wanted all that settled before she got so she couldn't attend to it." In response to a question as to whether the transfer of title was considered to take effect as a transfer at the time of her death he replied: "It was supposed to be transferred to us when she made the deed; that was the understanding with us. . . . At her death the property was ours to do as we pleased with. She would have the use of it . . . until her death. . . . As far as ownership was concerned, she [said she] considered us boys owned the property, but she reserved the right for the use of the property until her death. . . . [It was] my understanding" that the proceeds of the sale of the property were to be used "to help mother. . . . It [the property] was supposed to be transferred to us when she made the deed."

The evidence shows beyond a doubt that there never was any intent on the part of the grantor or of the grantees that appellant and his brothers should hold title for the benefit

of their mother. There was no qualification of the absolute conveyance of the fee simple title. The sons' apparent intent that she was to have the use of the property during her lifetime is not incompatible with their ownership. In the performance of the filial obligation imposed upon them by section 206 of the Civil Code to support their mother they may have agreed to her occupancy of the property if she returned from the hospital. Such an agreement would not have vested in her any interest in the property after the delivery and recordation of her deed, nor any interest in the proceeds of the sale.

█ 2. *The effect of the deed by the six brothers to A. L. Leatart.* This transaction was initiated by the letter from A. L. Leatart to his brothers in which he offered to purchase the property and suggested that the amount paid by him therefor be deposited in a bank in his mother's name "but with all seven boys as co-tenants" and he stipulated that if any money was left after the payment of their mother's expenses "it should be equally divided seven ways and subject to withdrawal by each beneficiary." The other six brothers agreed to his proposal and joined in a deed conveying the property to him. He testified that he purchased the property from his six brothers in the circumstances and for the purpose set forth in his letter but that he regarded that he had a one-seventh interest in the distribution of the proceeds after his mother's death—that he purchased the interests of the other six brothers in the property.

Since the fee title to the property became vested without reservation in the seven grantees as tenants in common, and since there is no evidence that they made a gift to their mother of the proceeds of the sale, each was the owner of a one-seventh interest in the fund which remained and, as proposed in said letter, it should be "equally divided seven ways and subject to withdrawal by each beneficiary." By asserting the right to payment of the money to him as administrator he is repudiating the proposal made by him and accepted by his cotenants. The fund did not become the property of Mrs. Leatart during her lifetime and was not a part of her estate upon her death.

The evidence does not sustain the finding that the cross-defendants considered the fund as belonging to the decedent, or the finding that they had no right, title or interest in the fund except as to their distributive shares as heirs at law of the decedent.

When the findings of fact are erroneous in any respect the appropriate proceeding is to have them set aside upon a motion for a new trial. (*Pico* v. *Sepulveda,* 66 Cal. 336, 337 [5 P. 515]; *Power* v. *Fairbanks,* 146 Cal. 611, 614 [80 P. 1075].) In granting the motion the court rightfully determined that there should be a re-examination of issues of fact which determined the judgment previously rendered (Code Civ. Proc., § 656) and that the judgment was against law.

The order granting a new trial is affirmed.

Moore, P. J., and McComb, J., concurred.