**WELLS FARGO BANK & UNION TRUST CO. v. UNITED STATES.**

No. 27521–R.

United States District Court
N. D. California, S. D.

Nov. 4, 1948.

Lawrence C. Baker and Heller, Ehrman, White & McAuliffe all of San Francisco, Cal., for plaintiff.

Frank J. Hennessy, U. S. Atty. Northern Dist. of California, and William E. Licking, Asst. U. S. Atty., both of San Francisco, Cal., for defendant.

YANKWICH, District Judge.

I.   The Facts in the Case.

On September 18, 1938, Henry C. Morris died intestate. At the time of his death, he was a resident of Oakland, California His estate was finally administered by American Trust Company, acting as the successor executor under the terms of the will.

On May 24, 1944, American Trust Company filed a Federal Estate Tax Return for the estate of Henry C. Morris in the office of the Collector of Internal Revenue, First District of California. The return reported as non-taxable the transfer of certain real properties by Morris during his lifetime to his wife, Mary E. Morris.

On December 30, 1931, Morris executed a deed naming his wife, the grantee of real properties located in the counties of Alameda and Glenn, California. The deed was recorded on November 10, 1938, after the death of the grantor. The following statement concerning the deed, dated the same day, and signed by Morris, was found in his files:

"Oakland California

"On this 30th day of December, 1931, I signed sealed, executed and delivered to my wife Mary E. Glavin Morris, Deed of Gift to three parcels of land in Alameda County, California, and three parcels of land in Glenn County, California, or a total of six parcels of land in all, all as more particularly described in said Deed of Gift, dated December 30, 1931, between H. C. Morris (also known as Henry C. Morris) party of the first part, and Mary E. Morris, his wife, party of the second part.

"Dated at Oakland, California, this 30th day of December, 1931.

"H. C. Morris."

On August 3, 1944, the Federal Estate Tax Return, filed on behalf of the estate of Henry C. Morris, was audited by the Internal Revenue Agent in charge of the First District of California. A deficiency was assessed in Federal Estate Taxes in the sum of $60,789.51 against the estate, based upon the inclusion of the real properties hereinbefore mentioned as part of the taxable estate. American Trust Company acquiesced to this assessment, filed a written notice waiving the restrictions on assessment and collection of the deficiency and thereupon paid the amount of the deficiency in full.

On November 7, 1944, the Commissioner of Internal Revenue in Washington, D. C., forwarded a letter to American Trust Company confirming the determination of the deficiency.

On May 18, 1942, Mary E. Morris, widow of Henry C. Morris, died testate. She was, at the time of her death, a resident of Oakland, California. Her estate was administered by Wells Fargo Bank & Union Trust Co., acting as executor in accordance with the provisions of her will. On August 17, 1943, the executor filed a Federal Estate Tax Return on behalf of her estate, assessing the estate tax liability at $300,018.58, which was paid to the Collector of Internal Revenue.

The real properties described in the deed from Henry C. Morris were included in this return as part of the taxable estate of Mary E. Morris.

Upon audit of this Federal Estate Tax Return, the Internal Revenue Agent in charge, in the First District of California, on January 8, 1946, proposed an over-assessment in the sum of $62,236.81. This over-assessment was based largely upon the allowance of a deduction of the appropriately reduced value of the real properties hereinbefore mentioned as having been previously taxed in the estate of Henry C. Morris, within the five-year period next preceding the death of Mary E. Morris, as provided by Section 812(c) of the Internal Revenue Code, 26 U.S.C.A. § 812(c).

On August 13, 1946, the plaintiff, Wells Fargo Bank & Union Trust Co., as executor of the will of Mary E. Morris, acting in pursuance of this over-assessment, filed a claim for refund in the amount determined by the Internal Revenue Agent.

On May 9, 1947, the Internal Revenue Agent in charge of the First District of California, *reversing the position previously taken by him,* proposed an over-assessment in the Federal Estate Tax liability of the estate of Henry C. Morris in the sum of $60,029.09. This proposed over-assessment was based upon the newly assumed position that the real properties covered by the Deed of Gift were not part of the taxable estate of Henry C. Morris.

Contemporaneously with the proposal of the over-assessment in the estate of Henry C. Morris, the Internal Revenue Agent,

also proposed a deficiency in the Federal Estate Tax liability of the estate of Mary E. Morris, based largely upon denial of the right to deduct the value of the real properties as having been previously taxed. The estate tax was paid in full. A claim for refund of the excess tax was duly filed on August 13, 1946, and denied.

By this action, it is sought to recover the excess tax—$62,236.81.

Other facts will be referred to in the discussion to follow.

Briefly, I state my conclusions on the two questions presented by this litigation.

## II. Contingent Gifts.

■ I am of the view that the unrecorded deed of gift, dated December 30, 1931, from Henry C. Morris to his wife, Mary E. Morris, was a transfer of property, the ultimate possession or enjoyment of which was not to take effect until his death. Section 811(c), Internal Revenue Code, 26 U.S.C.A. § 811(c); Helvering v. Hallock, 1940, 309 U.S. 106, 118, 60 S.Ct. 444, 84 L. Ed. 604, 125 A.L.R. 1368; Fidelity-Philadelphia Trust Co. v. Rothensies, 324 U.S. 108, 111, 65 S.Ct. 508, 89 L.Ed. 783, 159 A. L.R. 227; Commissioner v. Bank of California, 9 Cir., 1946, 155 F.2d 1; Commissioner v. Spiegel's Estate, 7 Cir., 1946, 159 F.2d 257, 260; Commissioner v. Nathan's Estate, 7 Cir., 1947, 159 F.2d 546; Hurd v. Commissioner, 1 Cir., 1947, 160 F.2d 610; Mullikin v. Magruder, 4 Cir., 1945, 149 F. 2d 593; Trust Co. of Georgia v. Allen, 5 Cir., 1947, 164 F.2d 438; Thorp's Estate v. Commissioner, 3 Cir., 1947, 164 F.2d 966.

The property was valuable income-bearing, business property. It is plain from a study of the evidence that the transfer did not affect the income from the property. For seven years after the date of the deed, the grantor continued to receive this income. He deposited it to his account as he had done before, co-mingled it with income from other sources, and exercised absolute control over it. So the donor, in effect, retained a life estate. See, Des Granges v. Des Granges, 1917, 175 Cal. 67, 165 P. 13; Knudson v. Adams, 1934, 137 Cal.App.

261, 269, 30 P.2d 608. Labadie v. Labadie, 1943, 57 Cal.App.2d 456, 134 P.2d 858; cited by the Government does not stand in the way of this conclusion. To the contrary, the opinion recognizes that exercise of control over property and receipt of income, together with failure to record the instrument of gift, indicate the retention of a life estate. The Opinion says: "The defendant took the instruments and placed them in his own safe deposit box in a bank in Sacramento, without the knowledge or consent of his mother. She was a co-grantor of the property described in that deed. She testified positively that she never agreed to a delivery of that deed to her son. On the contrary, she said that it was her intention and the intention of her husband that the deed to their son was not to take effect until after her death. For a period of about eight years after the death of Peter Labadie, the plaintiff used the real property described in that deed as though it were her own property, by selling and conveying a portion of it, by executing a five-year lease to one of the ranches to W. J. Parsons, and by collecting and appropriating all of the income from the property to her own use. The written instructions which accompanied the defendant's deed indicates that the title was not to pass except 'in the event of *our both passing away.' The defendant recognized that fact by failing to claim title to the property during that period of time, by failing to record his deed for eight years, and by permitting his mother to handle the property and enjoy the proceeds therefrom as though she owned the title. The retaining of possession of the property by plaintiff and the exercising of acts of proprietorship over it by her are evidence of ownership and a lack of delivery of the deed.* Donahue v. Sweeney, 171 Cal. 388, 391, 153 P. 708; 9 Cal.Jur. 189, sec. 76." Labadie v. Labadie, supra, 57 Cal.App.2d at page 464, 134 P.2d at page 861. (Emphasis added.)

This is the type of dominion which existed in this case.

■ The fact that, under the law of California, a transfer of this character may be considered absolute (Shaver v. Canfield,

1937, 21 Cal.App.2d 734, 70 P.2d 507), and be effective to avoid probate of the property, does not prevent the application of Section 811(c). Indeed, the very object of the section is to retain in the estate of the donor "at his death that which * * * (he) gave *contingently* upon it". Helvering v. Hallock, supra, 309 U.S. at page 112, 60 S.Ct. at page 448, 84 L.Ed. 604, 125 A. L.R. 1368. (Emphasis added.)

So the property was properly taxed in the estate of the donor, Henry C. Morris.

### III. Finality of Determination.

■ The executors of the estate of the donor, Henry C. Morris, having paid the tax, the Commissioner of Internal Revenue cannot, long after the payment of his demand, and within the five year period, change his position in order to collect from the plaintiff, as the executor of the estate of the donee, Mary E. Morris, an additional tax, upon the theory that he erred years before in assessing the prior tax and in accepting full payment of it.

■ The law permits the value of property previously taxed to be deducted from subsequent estate taxation, if the tax has been finally determined and paid by the donor within five years. Internal Revenue Code, Sec. 812(c), 26 U.S.C.A. § 812(c). The facts here show such final determination. There was a controversy about the tax. The Commissioner made a determination, accompanied by an additional assessment, payment of which was demanded. He wrote to the executor of the estate of Henry C. Morris, under date of November 7, 1944:

"If the full amount of the tax liability has been paid no further action on your part will be necessary."

*This was a final letter. The assessment list was signed by the Commissioner on November 29, 1944, and forwarded to the Collector at San Francisco. In this inclusion of the property the executor acquiesced, filed a written notice waiving restrictions on the assessment and collection of the deficiency and paid in full the deficiency which had been proposed by the Internal Revenue Agent on August 3, 1944. The payment was accepted without reservation.* The offer of repayment of the tax previously paid by the Executor of the Estate of Henry C. Morris, implied in the proposed over-assessment, dated May 9, 1947, cannot wipe out the effect of the actions previously taken in that estate, so as to jeopard the rights of the later estate here involved.

■ It is true that, ordinarily, the acceptance of payment does not preclude a further assessment. See, McIlhenny v. Commissioner, 3 Cir., 1930, 39 F.2d 356; Levy v. Commissioner, 9 Cir., 1931, 48 F.2d 725; and see, 9 Mertens' Federal Law of Income Taxation, Sec. 52.07; Botany Worsted Mills v. United States, 1928, 278 U.S. 282, 49 S.Ct. 129, 73 L.Ed. 379; Victoria R. Johnston, 1930, 19 B.T.A. 630; Lester L. Robison, 1931, 22 B.T.A. 395; Joyce v. Gentsch, 6 Cir., 1944, 141 F.2d 891. However, here we are not dealing with the right of further assessment. What the Commissioner is seeking to do is *to force an unsolicited refund* upon one estate in order to impose a greater liability on a later estate and deprive it of the benefit of the inclusion in the earlier estate of property which became a part of the later estate within the five-year period. I do not believe that such unilateral action on the part of the Commissioner can nullify the effect of his actions in the earlier estate, so as to fasten upon the present estate a liability which the former estate, following a re-assessment, had acquiesced in and satisfied fully. See, Hermann S. Vath, 1940, 41 B.T.A. 487, 489; Mimeograph 4261, XIII–2 C.B. 371, Commissioner of Internal Revenue, C.C.H. Fed. Est. Service, Sec. 2613.05. The inclusion of this property in the estate of Henry C. Morris was not a designing or fraudulent act on the part of any one connected with that estate. It was done after a determination by the Bureau of Internal Revenue, approved by the Commissioner, which resulted in the re-assessment. The executor was informed by the Commissioner that if the re-assessment was paid "no further action" on his part was necessary. When this action was acqui--

esced in, the waivers filed, and the tax paid by the executor, and accepted, finality ensued. For nothing further remained to be done. The action was conclusive as to the taxpayer. See, United States v. Tod, 2 Cir., 1924, 1 F.2d 246, 252 et seq. It had that finality which makes it immune to attack. For it was an adjudication of the matter in dispute, followed by acquiescence by the taxpayer and acceptance by the Commissioner of the over-assessment which his Bureau had proposed. Expressed differently, the action had all the elements of a final adjudication (see cases cited above and see, Department of Banking v. Pink, 1942, 317 U.S. 264, 63 S.Ct. 233, 87 L.Ed. 254; 36 C.J.S., Final and Finality, pages 762, 764). To insist, as does the Government, that the finality contemplated by the statute is "judicial" finality, or the finality of formal agreements, 26 U.S.C.A. § 3760, is to place in the hands of the Commissioner the power to deprive the donee of an estate of the benefit of the five-year provision, in cases where there has been no controversy between the Commissioner and the first estate, calling for a judicial determination. This would take away from the donee the benefit of the prior estate's acquiescence in and acceptance of, a reassessment,—whenever the Commissioner or some one in the Bureau discovers that they could, by repudiating their prior voluntary action in the estate of the donor,— obtain a larger tax, in the estate of the donee. Such unregulated and irresponsible authority, if given judicial sanction, would allow the Commissioner to recapture, not from the same tax-paying estate, but from a later, *partially derivative estate,* revenue lost, *not through any act of the earlier estate which called for further reassessment,* but from a reassessment proposed by the Commissioner which the earlier estate paid in full. Under this view of the law, no finality, short of the statutory period of limitation, could ever be reached. And the Commissioner could, in his own "good time" and at his own "sweet will", change his mind, offer to repay to the estate of the donor, without the *asking,* the amount of the prior tax and by this ex parte procedure, bring back into the later estate of the donee for tax purposes the property which *the Commissioner himself had insisted should be included in the earlier estate of the donor.* This doctrine of finality it not sound, either as law or as ethics. And I cannot approve it.

For our administrative system is grounded, as is our judicial system, upon the proposition that there should be an end to every controversy. And, certainly, when, as here, an estate pays an additional demand of a taxing authority, and the latter accepts payment, there is a final determination which,—in the absence of fraud, concealment or special statutory reservations, (and, concededly, none exist in the present case)—precludes a later unilateral re-determination at the whim of the Commissioner, to the detriment of another estate.

Judgment will, therefore, be for the plaintiff.